STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROBERT C. SMITH, DEFENDANT-APPELLANT.

Argued March 31, 1952—Decided June 16, 1952.

*Mr. William V. Rovelo,* argued the cause for the appellant.

*Mr. William W. Wimmer,* Assistant Prosecutor of the Pleas, argued the cause for the respondent (*Mr. Horace K. Roberson,* Prosecutor of the Pleas and *Mr. William A. O'Brien,* Assistant Prosecutor of the Pleas, attorneys).

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal by the defendant, Robert C. Smith, from an order of the Hudson County Court denying his motion to dismiss eight indictments charging him with robbery and with assault with intent to rob.  These indictments were returned in the December term, 1945, true bills being voted on February 8, 1946, and the indictments being presented to the Court of Quarter Sessions of the County of Hudson on February 13, 1946.  On April 3, 1946, the indictments were listed for pleading and defendant-appellant failed to appear for the simple reason, as admitted by the State, that at the time the indictments were returned and listed for pleading the defendant-appellant was in the custody of the police authorities of Passaic County awaiting the disposition of another charge there.

On April 5, 1946, a *capias* issued out of the Hudson County Court of Quarter Sessions and was filed as a detainer with the Passaic County authorities.  On May 17, 1946, the defendant-appellant was sentenced in the Court of Quarter Sessions of the County of Passaic to serve 10 to 15 years on an indictment for robbery and 1 to 3 years on an indictment for carrying concealed weapons, to be served consecutively, making a total of 11 to 18 years to be served at the New Jersey State Prison at Trenton.  On May 22, 1946, the defendant began serving the said sentences and from that time to the present he has been confined as a prisoner in the State Prison.  At no time was he ever brought to Hudson

County to answer the charges pending against him nor has he entered any plea to these indictments, nor was he furnished with copies of the said indictments until recently.

Three weeks after his arrival at the State Prison on June 6, 1946, the defendant inquired of the Prosecutor of the Pleas of the County of Hudson concerning the disposition of his case, and on June 20, 1946, the prosecutor responded to the effect that the defendant had admitted in a signed statement his part in the crimes referred to and if he desired to enter a plea of guilty his appearance in court could be arranged and the matter disposed of. By letter some five years subsequent the defendant intimates he replied to this letter and stated he was innocent of the charges and did not intend to plead guilty or *non vult* and demanded an early trial and that this letter was never answered or acknowledged. There is no proof in the record of this alleged letter; in fact the record contains nothing between the prosecutor's reply of June 20, 1946, and a letter written on March 3, 1951, by the defendant in which he pointed out that the detainer which had been lodged against him at the State Prison because of the Hudson County indictments was almost six years old and he requested that he be brought to court so that he could meet the charges or that they be *nolle prossed*.

Apparently there was no reply to this letter and on May 21, 1951, the defendant moved the court on his own motion to dismiss the indictments for failure to direct that the trial of the indictments be moved upon a specified day. The letter was addressed to Judge Ziegener of the Hudson County Court under the misapprehension that Judge Ziegener was the assignment judge for the county. On May 23, 1951, Judge Ziegener addressed a letter to the defendant stating that he would refuse to dismiss the indictments and further informing the prisoner that no reply had been received by the prosecutor's office to their letter of June 20, 1946.

On May 28, 1951, the defendant wrote a letter to Judge Ziegener in which he stated he was innocent of the charges pending in Hudson County and referred to a motion of April

16, 1951, to set a date for trial, although the record before us does not embody this motion. On June 8, 1951, the first assistant prosecutor wrote the defendant stating the criminal calendars were made up to the end of June and that his case would be set down for trial when the court reopened in September, 1951.

In August, 1951, Assignment Judge Proctor designated counsel for the defendant to aid him in his defense and on August 22, 1951, the defendant through his counsel filed a notice of appeal from the decision of Judge Ziegener of May 23, 1951, denying his motion to dismiss the indictments. This appeal was perfected in the Appellate Division after leave to prosecute the appeal *in forma pauperis* was granted by this court on October 23, 1951, and was certified to this court on its own motion pursuant to *Rules* 1:2–1 and 1:5–1(*a*).

We are met *in limine* by the contention of the State that this appeal should be dismissed under *Rule* 2:5–3(*b*) (6) (*a*) on the ground that the refusal of the trial court to dismiss the indictments is only appealable in the discretion of the Appellate Division and no application for leave to appeal under this rule had been made. This rule, as the State points out, more or less reiterates what has been the common law practice in this State. It has been consistently held that the refusal of a trial court to quash or dismiss an indictment was not available to a defendant in the absence of clear proof of an abuse of discretion. It is not *ex debito justiciae* but is a matter of discretion whether the court will quash an indictment or put the party to his plea or demurrer or leave him to a motion in arrest of judgment. *State v. Riggs,* 92 *N. J. L.* 575 (*E. & A.* 1919); *State v. Lisena,* 131 *N. J. L.* 48 (*Sup. Ct.* 1943). And the State further contends correctly that the disposition of a motion such as this is always dealt with with caution and that the court is always loath to quash an indictment or dismiss it except on the clearest grounds because the result would be, in doubtful cases, that the defendant might be allowed to go scot free

because of the bar of the statute of limitations to the finding of any new indictment. *State v. Tilton,* 104 *N. J. L.* 268, *p.* 274 *(Sup. Ct.* 1928) ; *State v. Acton,* 9 *N. J. Mis. R.* 55 *(Sup. Ct.* 1931). *Cf. State v. Potter,* 83 *N. J. L.* 428 *(Sup. Ct.* 1912).

█ Since we are of the opinion that under the facts and circumstances here presented that the trial court was without power to dismiss these indictments as the legal sufficiency of them is admitted and since there is presented by these facts a question of law calling for determination, we will treat the case as one certified to the Hudson County Court on our own motion.

The first point made by the appellant is that he was denied his right to a speedy trial in violation of the State Constitution, statutes and present rules of criminal practice and the indictments should be dismissed.

The appellant relies on *Article I, paragraph* 10 of the *Constitution of* 1947 which provides that "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury." He could likewise rely on *Article I, paragraph* 8 of the *Constitution of* 1844 in effect at the time the indictments were returned. This latter constitutional provision was implemented by *R. S.* 2:190–1, which provided:

"Every indictment shall be tried the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow further time for the trial thereof ; and if such indictment be not so tried, the defendant shall be discharged on his own recognizance."

This statutory provision has been superseded by *Rule* 2:12–4(*b*) and (*c*).

The appellant contends that as early as June, 1946, he made a demand for trial which was ignored by the prosecutor, that he renewed these efforts in 1951 and that it clearly appears from the record that there was a violation of the defendant's right to a speedy trial guaranteed to him by the

Constitution and the statutes and that the delay was the delay of the State since he was always available for trial and that the defendant at no time applied for a postponement or consented to the delay. It should be noted here that there is no proof in the record that the defendant is prejudiced as a result of the delay. The appellant then argues the statutes which in their express terms provide for a discharge or dismissal in case a trial is not held within a stated time should be construed as mandatory and unless the delay is caused by the accused or the trial delayed on good cause, the accused, if he comes within the provisions of the statute, must be discharged and the indictments dismissed. It can be readily conceded there are a number of cases throughout the country construing statutes somewhat different from our own which hold to that effect, but our own cases are to the contrary insofar as the proposition is concerned that when such facts exist the indictments must be dismissed.

Our State is a common law state and the provisions of *R. S.* 2:190–1 and 2:190–2 have been adopted practically verbatim from the common law. The history of these sections is traced from *Allinson's Laws* in *State v. Garthwaite,* 23 *N. J. L.* 143 (*Sup. Ct.* 1851), showing the various changes therein, and in that case Chief Justice Green held that the term "discharge" as used in the statute imports merely a discharge of the defendant from his recognizance or from imprisonment and that the Legislature must be regarded as directing that the defendant, for want of prosecution of the indictment, should be discharged from imprisonment or from his recognizance and not from the indictment or from the legal penalty of the crime. And he there held that such a discharge from an indictment could not be pleaded as a bar to another indictment for the same offense. He left open the question as to whether the defendant could again be arrested and imprisoned and held to bail on the same indictment.

This latter question was subsequently answered by Mr. Justice Depue in *Apgar v. Woolston,* 43 *N. J. L.* 57 (*Sup.*

*Ct.* 1881), where, after a review of the common law practice, he held the court was without power on its own motion to dismiss an indictment for felony or treason without the consent of the Attorney-General and pointed out that where the prosecution delays the practice was to fix a day certain for trial and if the Attorney-General did not appear that the court would order a jury to be called and sworn and if no one appears to support the prosecution the court directed an acquittal. He then said:

"In this state the prosecution of all indictments, for whatever grade of crime, devolves on the public prosecutor, and the distinction between felonies and misdemeanors ·has, in that respect, been abolished. Under the control the courts of this state have always exercised over criminal prosecutions, the court, without doubt, has the power, in case the indictment has not been prosecuted with due diligence, in its discretion, to fix a day for trial and order a jury to be called and sworn, and to direct an acquittal for want of evidence if the prosecutor does not appear and proceed to the trial.

If after a discharge under the statute the indictment remains in force, there need be no difficulty in procuring the attendance of the defendant for trial. The defendant may be brought in by process; but, having been once discharged from attendance upon the court, process ought not to be issued against him without a special order of the court."

In *State v. Hickling,* 45 *N. J. L.* 152 (*Sup. Ct.* 1883) the court said:

"While it is true that an indictment, after it passes under the control of the court, may not, under long-established practice in this state, be discharged by the prosecutor without the consent or under the advice of the court, an order in most cases is readily granted on request of the prosecuting officer, yet I am unable to find any instance, where the common law prevails, in which the peremptory power of the court has been exerted upon the state's representative in thus discharging an indictment in whole or in part. It may be required or imposed in certain cases as a condition in granting some judgment or order which the state seeks and which the court might otherwise withhold, but no such mandate at the instance of parties ever goes except in those states where, by statute, power is conferred upon the court. * * *

Against unreasonable delay, or the continuance of oppressive prosecutions, defendants can, through methods indicated in *Apgar v. Woolston*, find protection in indisputable power of the court."

These cases are clearly authority for the proposition that under common law as it existed in this State the court is without power to dismiss an indictment at the instance of a party and that its power is limited to a discharge from imprisonment or an order that "the defendant shall be discharged on his own recognizance." It was the above-quoted decisions that resulted in the applicable statutes being amended in the *Revision* of 1898, *L.* 1898, *c.* 237, *sec.* 53, in which the language "the defendant shall be discharged on his own recognizance" was introduced in place of the language "he shall be discharged from his imprisonment." A similar interpretation was placed upon the provisions of section 52 of the Habeas Corpus Act, *Revision of* 1877, *R. S.* 2:188–1, presently superseded by *Rule* 2:12–4. *Cf. Patterson v. State,* 50 *N. J. L.* 421 (*E. & A.* 1888).

For the purpose of clarity and to emphasize that the provisions of this rule are consistent with the common law decisions of this State, *Rule* 2:12–4 is repeated here:

"(a) Upon motion of the prosecuting attorney, the court may order a *nolle prosequi* of an indictment or accusation. Such a *nolle prosequi* may not be filed during the trial without the consent of the defendant.

(b) At any time after six months following the return of an indictment or the filing of an accusation, the Assignment Judge may direct that the trial of the indictment or accusation shall be moved upon a day specified. Upon failure of the prosecuting attorney to comply with such order the court may order the indictment or accusation dismissed, which dismissal shall be the equivalent of a judgment of acquittal.

(c) If there is unnecessary delay in presenting the charge to a grand jury or in filing an accusation against a defendant who has been held to answer upon a complaint, the Assignment Judge may dismiss the complaint."

This rule in effect vests in the assignment judge all the powers with respect to indictments and complaints exercised by the judges of the court of oyer and terminer and general gaol delivery at the common law, 4 *Chitty's Blackstone* *270 *et seq.,* and these same powers were exercised in this State under the *Constitutions of* 1776 and 1844 by the Supreme

Court justices as presiding justices of these courts, or the judges of the court of common pleas. The powers and duties of these judges in this respect have devolved presently upon the assignment judge of the Superior Court in the county where the indictments are returned.

Defendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered.

Rule 2:12–4(b) goes one step farther and permits the court to order the indictment or accusation dismissed, "which dismissal shall be the equivalent of a judgment of acquittal." The appellant has never been constitutionally guaranteed more than that, and his right to discharge from custody or to have the accusation dismissed absolutely and a judgment of acquittal entered never became absolute until he had applied to the court to fix a day certain for the trial of his indictment and then only on the failure of the State to proceed with the cause.

The right to a speedy trial is a personal one but it is an important one and it is guaranteed to each one who may stand accused of a crime, not only to one so accused for the first time but to the habitual offender. 14 *Am. Jur., Criminal Law, sec.* 134.

As to persons accused of a crime who are incarcerated in prison the general rule is that a sovereign may not deny an accused person a speedy trial even though he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentence in a court of that sovereign. 118 *A. L. R.* 1037; 22 *C. J. S., Criminal Law,* 467; *Harris v. State,* 71 *A. 2d* 37 (*Ct. App. Md.* 1950). But the right of a prisoner is a personal right and one which he can waive and he must make a demand for a speedy trial. 14 *Am. Jur., Criminal Law, sec.* 138; *Harris v. State, supra.* There is nothing in our statutes or rules which makes it mandatory upon the State to proceed to trial with an indictment.

■ *Rule* 2:12–4(*b*) is directory and permits the assignment judge at any time after six months following the return of an indictment or accusation to direct that it be moved upon a day specified. This provision follows the traditional practice of the common law and the court of oyer and terminer and general gaol delivery and should be followed wherever possible where the prisoner is incarcerated in a prison in this State. Of course, where the defendant is incarcerated in a prison of a foreign state or in a prison of the United States an exception to the rule arises where the prison authorities of the other jurisdiction refuse in their discretion to release the prisoner for the time necessary to put him to trial in this State. See *Ponzi v. Fessenden,* 258 *U. S.* 254, 255, 42 *Sup. Ct.* 309, 66 *L. Ed.* 607 (1922), 22 *A. L. R.* 879.

As stated, the right to a speedy trial being an important right the assignment judges must or should attempt in all cases where possible to bring the trial of the indictments on in accordance with the provisions of *Rule* 2:12–4.

The cause is remanded to the Hudson County Court with a direction to the assignment judge to fix a specified day early in the September, 1952, term of that court for the trial of these indictments and that he give proper and sufficient notice to the prosecutor of the pleas, the defendant-appellant and his counsel of the day so fixed. The order refusing to dismiss these indictments is affirmed.

WACHENFELD, J. (dissenting). The appellant, a convicted felon, is presently serving in State Prison a term of 11 to 18 years imposed in the Passaic County Court. He complains of his inability to obtain trial on other indictments pending against him returned in Hudson County, where there are eight bills of indictment, six for robbery and two for assault with intent to rob. All these indictments were returned in the December term, 1945.

The indictments were listed for pleading in Hudson County in April, 1946, and the defendant failed to respond and plead

thereto. Admittedly he could not do so, being incarcerated at the time in Passaic County. A detainer was filed against him and he was subsequently sentenced an another indictment to the term he is now serving. On May 22, 1946, he was transferred to the State Prison.

Thereafter, on June 6, 1946, he inquired by letter of the Prosecutor of Hudson County about the pending indictments and was advised on June 20 that, having admitted his guilt of the other crimes charged, his appearance in court could be arranged if he desired to enter a plea of guilty and the matters disposed of. He refused to accept the invitation to plead guilty, alleging his innocence.

The appellant asserts he wrote a letter demanding he be brought on for trial. The prosecutor denies such a letter was received as his files fail to reveal it. Nevertheless, on March 3, 1951, the prisoner wrote another letter in which he said:

"This is my third letter to your office, since 1946, requesting that you bring me to trial on the detainers that your office lodged against me here at the prison. I wish to bring to your attention, that these detainers are almost six years old, and I want to be released from any further anxiety and harassment on said detainers.

Therefore, Sir, I respectfully request that I be brought to Court, so that I could face these detainers, or that you *nolle pros.* them. * * *"

His communication and demands were ignored. He then made a motion to set a date for trial. No action was taken on this motion and the prisoner therefore, on May 21, moved to dimiss the indictments for failure to prosecute. Two days later it was denied, the reason assigned being the defendant had failed to plead to the indictment. Obviously he could not do so as he was incarcerated and incapable of making an appearance without the authorities taking the necessary action to accomplish it.

The court's refusal to dismiss the indictments is the subject of this appeal, counsel for the purpose having been assigned.

The prisoner asserts he was denied his constitutional rights to a speedy trial after having made demands therefor and contends the mere fact that he was serving time on another sentence does not nullify the constitutional provisions.

The right to a speedy trial was recognized at the common law from the time of the Magna Carta, called the foundation of personal and political liberty of English-speaking people, and is presently specifically provided for in our own Constitution. The *Constitution* of 1947, *Article I, par.* 10, provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury * * *."

See section 52 of the Habeas Corpus Act, *Revision of* 1877, now *R. S.* 2:188–1; *section* 65 of the Criminal Procedure Act, *Revision of* 1877, now *R. S.* 2:190–1.

In *Patterson v. State,* 50 *N. J. L.* 421 (*E. & A.* 1888), the court said:

"With both of these statutes before it, the constitutional convention of 1844 ingrafted in the organic law the provision that in all criminal prosecutions the accused shall have the right to a speedy trial, and thus enjoined, not only upon the courts, but also upon the legislature itself, the duty of preserving this time-honored principle in the exercise of penal authority."

The majority cites *Apgar v. Woolston,* 43 *N. J. L.* 57 (*Sup. Ct.* 1881), which reaches the not very startling result that "the court * * * has the power, in case the indictment has not been prosecuted with due diligence * * * to fix a day for trial." The opinion likewise cites *State v. Hickling,* 45 *N. J. L.* 152 (*Sup. Ct.* 1883), which holds "* * * the prosecutor without the consent or under the advise of the court" cannot discharge indictments. The difficulty there encountered seems to be that the court could find no instance "where the common law prevails, in which the peremptory power of the court has been exerted upon the state's representative in thus discharging an indictment in whole or in part."

I quarrel with neither result. I admit the court has the power "to fix a day for trial" and think it elementary without need of authority. In the case *sub judice* the prisoner was not asking the court to exert its "peremptory power * * * upon the state's representative." He is only asking the use of the court's inherent power to enforce his constitutionally guaranteed rights.

I cannot subscribe to the majority's conclusion that these two cases stand for "the proposition that under common law as it existed in this State the court is without power to dismiss an indictment at the instance of a party * * *." In the *Hickling* case, *supra*, the last paragraph, quoted in the majority opinion, said: "Against unreasonable delay, or the continuance of oppressive prosecutions, defendants can, through methods indicated in *Apgar v. Woolston,* find protection in *indisputable power* of the court." (Italics added.)

I am in accord that there is indisputable power in the courts either under the old system or new to make effective the constitutional guarantees specifically recited in every Constitution we ever had, including our last one of 1947. The right to a speedy trial is one of the fundamental safeguards of the individual against the overreaching of the power of the State and is grounded in the taproots of the common law.

It is an odd kind of justice that denies the power and duty of the courts to enforce vigorously so basic a right. The majority opinion proclaims the preciousness of the right of speedy trial and then proceeds to deny it.

The appellant contends his constitutional right to a speedy trial is an absolute one not subject to the discretion of the court, citing *State v. Keefe,* 17 *Wyo.* 227, 98 *Pac.* 122 (1908), and may be availed of even though he is already incarcerated.

"A sovereign may not deny an accused person a speedy trial even though he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentenced in a court of that sovereign." *Harris v. State,* 71 *A. 2d* 36 (*Ct. App. Md.* 1950).

The burden of disposing of the indictments is upon the State and not upon the defendant. The failure to grant a trial although requested for a period of six years is unreasonable and in violation of the defendant's constitutional rights and guarantees. It may be impossible for a prisoner by reason of his incarceration to comply with all of the provisions of our rules of procedure. If he has made known his desire for a speedy trial, the authorities are under a constitutional mandate to heed the request and to grant his demand.

The majority says: "There is no proof in the record that the defendant is prejudiced as a result of the delay." When a trial is delayed for many years over the protest of the accused, prejudice can be presumed.

Here the prisoner not only requested a trial but made a motion to set a date for trial, upon which no action was taken. The trial court, under these circumstances, was not privileged to suspend the defendant's constitutional guarantees.

I would vote to reverse the judgment and enter an order dismissing the indictments against him.

I am authorized to say that Mr. Chief Justice VANDERBILT joins in this dissent.

*For affirmance*—Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Chief Justice VANDERBILT and Justice WACHENFELD—2.