23 N.J. Super. 522 (1952)
93 A.2d 200
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SAMUEL APPICE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered December 8, 1952.
Decided December 12, 1952.
*524 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Samuel Appice, appellant, pro se.
Mr. Edward Cohn, Prosecutor of the Pleas of Union County, for respondent (Mr. H. Russell Morss, Jr., First Assistant Prosecutor, on the brief).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant appeals from an order of the Union County Court denying his motion to dismiss two indictments charging him, together with his accomplices Pisano and DeMaio, with attempted robbery and assault with intent to kill.
The indictments were returned by the October 1947 term of the Union County grand jury and filed with the former Court of Oyer and Terminer of that county on December 18, 1947. Defendant was then serving a term of four to ten years in the New Jersey State Prison for another crime. The Union County authorities promptly lodged a detainer against him.
DeMaio was sentenced to State Prison on January 15, 1948 for a term of 10 to 12 years on each charge, the sentences to run concurrently. No plea was entered to the indictments by Appice or Pisano until July 22, 1952.
On January 21, 1948 defendant wrote the Prosecutor of the Pleas of Union County. He spoke of his current prison term and of the fact that upon its completion he would still have six years to serve on a prior sentence. His future appeared "dim"; he protested that he was not "an uncontrolable criminal" and that his criminal record was due to "lack of a steady job, and my friends." After mentioning the Union County detainer, defendant went on to say:
*525 "I would like to face said detainer. And I am willing to meet you more than half way, I will plead to the mercy of the court, and I will accept a sentence of 10 to 10 years to run concurrently retro active.

* * * * * * * *
Sir: if I were to be given a consecutive sentence it would mean that I would serve 20 years. * * *
I am leaving myself to your Mercy, for you are the only one, besides God, that can help me in my present plight. * * *"
The prosecutor replied on February 2, 1948, stating:
"If you want to come back to this County to plead guilty or non vult to the charge against you, we will arrange to do so by writ of habeas corpus. However, you must understand that the matter of sentence rests with the Judge."
Defendant again wrote the prosecutor on February 10, 1948 stating that if he were given consecutive sentences he would have to serve 20 years plus 6 years from his previous commitment:
"I would much rather go to trial. * * * I realize that I might receive a much larger sentence if I am found guilty. But sir I would not be able to serve twenty five years let alone more. My lawyer tells me that there is a small chance of being found not guilty. I have no faith in my lawyer. * * * Perhaps I have misinterpret your letter, I hope I have. Sir: I would like to know if you have acquainted the judge with the facts in my case. If you can arrange an interview with the judge in my behalf I will be deeply gratefull to you. * * *"
There was no further correspondence until 1952.
Defendant applied for a writ of habeas corpus in September 1951, seeking dismissal of the Union County indictments because they had not been tried for almost four years. The application was denied without prejudice. In May 1952 the assignment judge for Mercer County wrote defendant a detailed letter as to his status and suggested that he could, under Rule 2:12-4(b), request the assignment judge for Union County to direct that a trial of the indictments be moved by the prosecutor upon a day certain. The judge *526 carefully explained what steps defendant might take following the denial or granting of his request.
In the belief that Rule 2:12-4 permitted such action, defendant filed with the Union County Court, Law Division, his "notice of motion to quash" the indictment charging him with assault with intent to kill. The assignment judge referred the notice to the prosecutor who, on June 11, 1952, wrote defendant that the rule was not applicable to his case because: (1) under subsection (b) defendant had to plead to the indictment before the assignment judge could act, and defendant had not yet pleaded; and (2) subsection (c) related to unnecessary delay in presenting the charge to the grand jury, and the charge against defendant had promptly been presented and an indictment filed. After referring to the correspondence in early 1948, the prosecutor repeated his offer that he was more than willing to bring defendant back to Union County to plead to the indictments in question; that if defendant was without funds and desired to plead "not guilty," an attorney could be assigned to represent him without cost; and that it was to be understood "that there is no way that you can get a commitment from the County Court in advance." Defendant then requested the prosecutor to arrange for a plea to the indictment and advised that he would at that time ask that the indictment be quashed on the ground that his constitutional rights had been denied.
Defendant appeared before the County Court for the first time on July 8, 1952. The judge assigned counsel to defend the prisoner and adjourned the hearing on the motion for one week. After a further adjournment of a week the motion came on for argument on July 22, 1952. Defendant relied upon the letters he had written the prosecutor on January 21 and February 10, 1948. The County Court denied the motion because defendant had failed to show good cause therefor or the denial of any right under the Federal or State Constitutions or the rules. When ordered to plead, defendant *527 chose to stand mute. The court thereupon directed entry of a plea of not guilty in his behalf on both indictments.
Although defendant's motion to quash was addressed to only one of the two indictments, the court considered it as addressed to both in denying the motion. A formal order to that effect was entered November 5, 1952, nunc pro tunc. Defendant had in the meantime filed his notice of appeal on August 8, 1952. This court granted his petition for leave to appeal in forma pauperis on September 8, 1952.
The facts of this case bring it squarely within the principles of the recent Supreme Court decision in State v. Smith, 10 N.J. 84 (1952). The legal sufficiency of the indictments is not attacked. Under the common law as it existed in New Jersey, as well as under R.S. 2:190-1 and 2 adopted from the common law and in effect at the time the two indictments were returned, the trial court was without power to dismiss an indictment at the instance of the accused.
The statutory provisions have been superseded by Rule 2:12-4, effective September 15, 1948. Rule 2:12-4(b) provides:
"At any time after six months following the return of an indictment or the filing of an accusation, the Assignment Judge may direct that the trial of the indictment or accusation shall be moved upon a day specified. Upon failure of the prosecuting attorney to comply with such order the court may order the indictment or accusation dismissed, which dismissal shall be the equivalent of a judgment of acquittal."
In reviewing the law of our State on the subject since early days, Justice Oliphant said in State v. Smith, 10 N.J., at p. 93:
"Defendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered.
Rule 2:12-4(b) goes one step farther and permits the court to order the indictment or accusation dismissed, `which dismissal shall be the equivalent of a judgment of acquittal.' The appellant has *528 never been constitutionally guaranteed more than that, and his right to discharge from custody or to have the accusation dismissed absolutely and a judgment of acquittal entered never became absolute until he had applied to the court to fix a day certain for the trial of his indictment and then only on the failure of the State to proceed with the cause."
The court described the right of a prisoner to a speedy trial as "a personal right and one which he can waive." The prisoner himself must demand a speedy trial.
Defendant never applied to the assignment judge for Union County or to any other judge to fix a specific date for trial. In fact, he never even pleaded to the indictments, the "not guilty" plea finally being entered at the court's direction on July 22, 1952.
There is no proof that defendant was prejudiced as a result of the delay. A similar observation was made by the court in the Smith case (10 N.J., at p. 90). Noting it, defendant now for the first time states that one Robert Johnson, of Montclair, New Jersey, could have testified to an alibi. He claims that Johnson's death in 1948 has prejudiced his defense. We have nothing to go on but the bare statement of the defendant that this is so. Supporting and persuasive detail is completely lacking. It is almost five years since defendant offered to meet the prosecutor "more than half way," plead "to the Mercy of the court" and "accept a sentence of 10 to 10 years to run concurrently retro active." He has never actually denied his guilt. Coming when it does, defendant's representation that the death of his alibi witness has prejudiced him impresses us as sheer invention.
Defendant contends that under our decisions the right of the accused to a speedy trial is made to depend upon his knowledge of the common law and constitutional and statutory law. He claims that being semi-literate, with no more than a third-grade grammar school education, he was therefore put to an unfair disadvantage. Defendant's previous experience with the criminal law, his letters and his brief indicate that he is not as ignorant as he represents himself *529 to be. Moreover, he was not without the benefit of legal guidance. In his letter to the prosecutor under date of February 10, 1948 he says that "My lawyer tells me that there is a small chance of being found not guilty. I have no faith in my lawyer." It thus appears that defendant had the benefit of counsel when the indictments were still fresh, and there is nothing to show that he did not continue to have competent legal advice thereafter. If funds were not available to engage an attorney, defendant could during the intervening years have requested that counsel be assigned. Rule 2:12-1 has been liberally administered to the end that justice be assured to every accused person.
Defendant further argues that subsections (b) and (c) of Rule 2:12-4 are inconsistent and deny him his constitutional rights of equal protection of the law and due process. The argument is specious and lacks merit.
One fact remains  that despite the salutary provisions of Rule 2:12-4(b), promulgated September 15, 1948 and superseding R.S. 2:190-2, there was a delay of more than 4 1/2 years in bringing defendant before the bar of justice for plea and trial. Although directory, those provisions should be followed whenever possible where a defendant is incarcerated in a prison in this State. The right to a speedy trial is a right of fundamental importance, guaranteed to every person under indictment. It is the duty of assignment judges to see to it that a person who stands accused of a crime is brought to trial with all possible speed, in accordance with the rule.
True, defendant's letters to the prosecutor soon after the return of the indictments may be considered as an attempt on his part to bargain with the State for a more lenient sentence. However, in his letter of February 10, 1948 defendant did say that he "would much rather go to trial" than serve a possible 26 years in prison.
The prosecuting authorities of Union County were aware of the availability of the defendant for plea and trial during the entire period of his incarceration in the State *530 Prison. Our courts speak of the right to a speedy trial as "one of the fundamental safeguards of the individual against the overreaching of the power of the State * * * grounded in the taproots of the common law." State v. Smith, 10 N.J. 84, 97 (1952) (dissent). If declarations like this are not to become anything more than high-sounding phrases, the burden is upon the State to dispose of indictments with all reasonable dispatch. The long delay here is not consonant with constitutional safeguards and the minimum concepts of justice. It cannot be justified because of the pressure of the criminal trial calendar.
That a person under indictment happens to be serving a prison sentence in this State does not, of course, place him beyond the reach of the prosecuting attorney or the court for trial. Prison walls are no impediment to the expeditious conduct of our criminal business. A defendant's right to a speedy trial should always be the vital concern of the State, whether he demands trial or not. Any other view can only serve to weaken the fabric of the constitutional guaranty.
The cause is remanded to the Union County Court with the direction to the assignment judge to fix an early specified day for the trial of the indictments, and to give proper and sufficient notice to the prosecutor, the defendant and his counsel of the day so fixed. The order denying defendant's motion to dismiss the indictments is affirmed.