37 N.J. Super. 144 (1955)
117 A.2d 153
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN DANDRIDGE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered October 3, 1955.
Decided October 5, 1955.
*145 Mr. Martin J. Queenan, Burlington County Prosecutor, attorney for the State.
Mr. John Dandridge, pro se.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant, serving a life sentence for murder, on November 6, 1945 in concert with three fellow inmates, Edwards, Cokley and Hart, assaulted a guard at the New Jersey State Prison Farm at Bordentown, N.J., scaled the wall, stole the guard's automobile, and escaped from the institution. All four were apprehended and returned to prison a few days later. Thereafter the December 1945 Burlington County grand jury returned three indictments, the first charging defendant individually with the crime of escape and the other two charging him and his prison *146 mates jointly with larceny of the automobile and with atrocious assault and battery. Almost nine years passed during which none of them was ever brought to trial.
On September 27, 1954 a motion to quash the indictments against Edwards was argued by court-assigned counsel, who also undertook to argue the cause for defendant and the other two escapees. The motion was opposed by the assistant prosecutor for Burlington County. The assignment judge who heard the argument denied the motion and directed the prosecutor to review his files and either move to nol. pros. the indictments or bring the accused to trial. The same day all four men, represented by the assigned counsel for such purpose by direction of the court, entered pleas of not guilty to the pending indictments.
We take judicial notice of the fact that at that time Burlington County had been without a county judge since April 1954, and no judge was available to handle the regular criminal jury calendar before February 1955.
On November 18, 1954 defendant addressed a "Motion for a Speedy Trial" to the assignment judge for Burlington County, noting that more than six months had passed since the return of the indictments and basing his demand on the constitutional guaranty of speedy trial. Const. of 1947, Art. I, par. 10. (And see Const. of 1844, Art. I, par. 8, in effect at the time the indictments were returned.) This action was undoubtedly inspired by R.R. 3:11-3(b) which superseded R.S. 2:190-2, not reenacted in the 1951 revision of Title 2 of the Revised Statutes. Contrary to defendant's representation that his request was never acknowledged, the proof is that the judge temporarily designated as assignment judge for the county acknowledged its receipt by letter of December 23, 1954. He again wrote defendant on January 5, 1955 advising that in accordance with the request for a speedy trial he had directed the prosecutor of Burlington County to move the indictments "at the earliest possible date." Defendant nevertheless, on January 18, 1955, made a motion to dismiss the indictments for failure to move them for trial. It does not appear that any action was taken on this motion.
*147 Defendant was brought to trial on the three indictments on February 21, 1955. This was the first case listed for trial before the judge who had just been made available to handle the Burlington County criminal calendar. Co-defendants Edwards and Hart retracted their previous pleas and pleaded non vult. Defendant and his co-defendant Cokley elected to stand trial. The jury found both guilty on all indictments. The sentences defendant received were one to three years in State Prison for escape, one to three years for larceny of automobile, and three to five years for atrocious assault and battery, the sentences to run consecutively with each other and consecutively with the murder sentence.
Defendant poses three questions on this appeal from the judgment of conviction  denial of due process, denial of his constitutional right to a speedy trial, and public policy requiring the setting aside of his convictions  but argues only the second.
The appeal could well be dismissed out of hand. Defendant appeals from the conviction, and not from any denial of his motion for a speedy trial or of his subsequent motion to dismiss the indictments for failure timely to move them to trial. We have no record of such a denial or of such an appeal, as in State v. Smith, 10 N.J. 84 (1952), and State v. Appice, 23 N.J. Super. 522 (App. Div. 1952). Actually, defendant's motion for a speedy trial achieved its purpose; the assignment judge, apparently acting under the provisions of R.R. 3:11-3(b), moved the prosecutor to action, and defendant was tried on the first possible date, some three months after making his request.
But were defendant properly before us on an appeal from a denial (non-existent) of either of his motions, his cause would have to fail, and this for the reasons and conclusion reached in the Smith case, followed in Appice, supra. The facts he sets before us bring him squarely within the principles enunciated in Smith, where it was said that the constitutional right to a speedy trial is a personal right which may be waived, and that before an accused may assert such right he must make demand for a speedy trial. State v. *148 Smith, supra, 10 N.J., at page 93. The Supreme Court stated that
"Defendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered."
Further, as to the effect of Rule 2:12-4(b), now R.R. 3:11-3(b), the court said:
"Rule 2:12-4(b) goes one step further and permits the court to order the indictment or accusation dismissed, `which dismissal shall be the equivalent of a judgment of acquittal.' The appellant has never been constitutionally guaranteed more than that, and his right to discharge from custody or to have the accusation dismissed absolutely and a judgment of acquittal entered never became absolute until he had applied to the court to fix a day certain for the trial of his indictment and then only on the failure of the State to proceed with the cause." (10 N.J., at page 93)
Defendant asserts that during the latter years of his imprisonment for murder he "pleaded with the Burlington County authorities to bring him to trial on the three indictments * * * while his witnesses were available." He does not, however, furnish any evidence of when or how or to whom such requests were made. There is not present in this case even the color of such a demand, as in the Smith and Appice cases, supra. Nor does he enlighten us with respect to who his witnesses were, the nature of their expected testimony, or how such witnesses might have aided him in his defense. The only effort exerted by defendant, on the proofs before us, was his demand on November 18, 1954 for a speedy trial.
It should be noted that the legal sufficiency of the indictments is not attacked. Nor is there proof that defendant was in any way prejudiced as a result of the delay.
Although defendant may not prevail, the fact remains that despite former R.S. 2:190-1, dealing with the time for the trial of indictments (not reenacted in the revision of *149 1951) and R.R. 3:11-3 (former Rule 2:12-4), there was a delay of nine years before defendant was brought to trial. That he was serving a life term does not excuse the failure to bring him to justice with all possible speed, thus affording him the fundamental right guaranteed to all who stand accused, whether they be at liberty or in prison. The prosecuting authorities of Burlington County certainly were aware of defendant's availability for plea and trial during the entire period from 1945 to 1954. The Smith doctrine is the law of the case, but we cannot blink at the fact that there was a callous disregard for defendant's constitutional rights. As we had occasion to say in the case of a delay only half as long as that which was visited upon the present defendant:
"* * * Our courts speak of the right to a speedy trial as `one of the fundamental safeguards of the individual against the overreaching of the power of the State * * * grounded in the taproots of the common law.' State v. Smith, 10 N.J. 84, 97 (1952) (dissent). If declarations like this are not to become anything more than high-sounding phrases, the burden is upon the State to dispose of indictments with all reasonable dispatch. The long delay here is not consonant with constitutional safeguards and the minimum concepts of justice. It cannot be justified because of the pressure of the criminal trial calendar.
That a person under indictment happens to be serving a prison sentence in this State does not, of course, place him beyond the reach of the prosecuting attorney or the court for trial. Prison walls are no impediment to the expeditious conduct of our criminal business. A defendant's right to a speedy trial should always be the vital concern of the State, whether he demands trial or not. Any other view can only serve to weaken the fabric of the constitutional guaranty." (State v. Appice, supra, 23 N.J. Super., at page 530.)
This appeal must be dismissed.