131 N.J. Super. 484 (1974)
330 A.2d 601
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RALPH X. DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1974.
Decided December 16, 1974.
*486 Before Judges MICHELS, MORGAN and KENTZ.
Mr. Kenneth N. Siegel, Assistant Prosecutor, argued the cause for respondent (Mr. Karl Asch, Prosecutor of Union County, attorney; Mr. Lawrence H. Posner, Assistant Prosecutor, on the brief).
Mr. Stephen S. Weinstein argued the cause for appellant.
*487 The opinion of the court was delivered by MORGAN, J.A.D.
In January 1963 the Union County grand jury, in two separate indictments, charged Ralph X. Davis, then in custody, with the murder of two persons. Indictment No. 185-J-62 accused him of murdering one Leon Hanjian, a rug merchant in Elizabeth, on January 25, 1963, and Indictment No. 186-J-62, the one with which this appeal is concerned, charged him with the murder of one Joseph Holden, an Elizabeth taxicab driver, during the early morning hours of January 23 or 24, 1963. The Hanjian indictment (185) was tried first and, following a conviction obtained on December 16, 1963, a sentence of death was imposed. That conviction was reversed on appeal and, following retrial which resulted in another conviction, the death sentence was again imposed in November 1965. For the next several years defendant fought unceasingly in both the state and federal courts against his own extinction. Nothing occurred with respect to Indictment 186 (the Holden murder and the indictment with which we are here concerned) because in 1964, during the pendency of the appeal proceedings with respect to Indictment 185, the State, upon an ex parte application, succeeded in having Indictment 186 placed on the inactive list where it apparently languished, forgotten by the State, until the case of State v. Funicello, 60 N.J. 60 (1972), cert. den. 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972), was decided on January 17, 1972. Funicello declared the unconstitutionality of the death penalty and mandated remission of all pending death sentences to life imprisonment to be imposed, nunc pro tunc, as of the date sentence was initially imposed. Accordingly, defendant's death sentence on the Hanjian conviction was commuted to life imprisonment to run from the date of his sentence on November 18, 1965, with all credits to which he would have been entitled had he been originally so sentenced.
Even after Funicello was decided, the State took no action with respect to the inactive Indictment 186. Rather it *488 was defendant's counsel, who on November 3, 1972, reactivated the case by filing a motion for discovery. On May 25, 1973 substituted counsel moved for dismissal of that indictment on the ground that a trial held approximately 11 years after return of the indictment would violate defendant's state and federally guaranteed constitutional rights to a speedy trial. U.S. Const., Amend. VI; N.J. Const. (1947), Art. I, Par. 10. Following a hearing directed to the speedy trial issue, during which extensive testimony was taken, the trial court denied defendant's motion to dismiss. Pursuant to leave granted, defendant appeals from this interlocutory order.
At the hearing below, the chronology of events already recited was regarded as being without any dispute. The State admitted to the trial court, as it did to this court on oral argument, that it made no effort to bring Indictment 186 to trial because it was of the view that no purpose would be served by such a trial in light of the death penalty already imposed with respect to the companion indictment. It was for this reason that the State obtained the ex parte order placing the indictment on the inactive list, where it remained until reactivated by defendant's motion for discovery.
In an effort to establish that demands for trial were made during the years 1964, 1965, 1968 and 1969, defendant testified that he wrote several letters to the Union County Prosecutor requesting trial of Indictment 186. Although he retained copies of these letters, the copies had been lost in June of 1972 during his transfer from one institution to another, and a prison official, one Sergeant Masters, testified that defendant did make a claim for property lost during such a transfer. Several fellow inmates produced at the hearing testified that they had observed and had helped defendant write some of these letters. No letters from Davis were found on file with the prosecutor's office. The chief clerk's testimony as to the routine followed in handling inmate mail was offered for the purpose *489 of discrediting defendant's assertions that such letters had been sent.
Defendant testified that two persons, now deceased, the Reverend and Mr. Fauntleroy, would have been able to provide him with an alibi for the Holden murder since he now claims he was in their company for most of the period of time during which the murder could have been committed. The State, however, produced a statement taken from defendant shortly after his arrest for both murders in which he made no mention of these two persons as possible alibi witnesses. No notice of alibi was served upon the prosecutor's office because, as testified to by Mr. Abrams, counsel assigned for both indictments, no one cared about the fate of Indictment 186 after the death penalty had been imposed upon Indictment 185, and no steps were therefore taken to prepare the matter for a trial which all believed would never take place.
At oral argument, and upon request from this court, the State outlined in brief the evidence it intended to produce at the proposed trial of Indictment 186. The State's case would be circumstantial in nature. No one witnessed Holden's murder. According to the State, the bullet which killed him came from the same gun which killed Hanjian approximately two days later and which was found in defendant's possession after the Hanjian murder, and a ballistics report will be offered by the State in support of this contention. Holden was a cab driver and his change dispenser was found missing when his body was discovered. The State intends to produce an employee of a dry cleaning establishment who allegedly will testify that about the time of the murder defendant paid for dry cleaning with substantial amounts of change. Defendant lived on the same block where Holden's body was discovered still in his cab. The State also indicated that it intends to produce evidence of the Hanjian murder and defendant's conviction thereof as establishing a common scheme or plan because Hanjian and Holden were killed within days of each other and in *490 the same manner, with a bullet fired into the back of the head at point blank range.
It is undisputed that the bullet which killed Holden is missing and has been missing for several years. Defendant contends that because the bullet is lost, he is now foreclosed from having it examined by his own ballistics expert in order to possibly dispute the fact basic to the State's case that it was fired by the gun which killed Hanjian. The report of defendant's expert submitted to this court suggests that the expert can utilize the photographs of the bullet taken by the State, although it emphasizes that photographs are certainly less preferable than having the bullet itself.
The trial judge denied defendant's motion to dismiss Indictment 186. After applying the balancing test described in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), he concluded that although the delay between indictment and proposed trial was extraordinarily long, the reason given by the State in explanation for the delay was a fully sufficient and reasonable one. He declined to believe defendant's testimony that he had demanded trial by writing letters to the prosecutor and found that no such demands had been made by defendant prior to the filing of the present motion to dismiss. The judge further disbelieved defendant's testimony that the two deceased Fauntleroys would have testified that he was with them during the time Holden could have been murdered. No mention was made of the missing bullet.
After careful consideration of this difficult and unfortunate case, we are firmly of the view that trial of an indictment 11 or 12 years[*] after its return constitutes, in the circumstances here presented, a clear violation of the defendant's *491 federally and state guaranteed right to a speedy trial. Although the speed with which a trial must follow an indictment's return is regarded as being relative to the circumstances in which a claim of unconstitutional delay has been asserted, there comes a point at which delay extended for an extraordinary length of time so weights the scale on which several considerations are to be balanced, that time becomes the decisive factor.
In the recent case of State v. Smith, 131 N.J. Super. 354 (App. Div. 1974), this court had occasion to examine some of the changes in New Jersey law wrought by recent decisions emanating from the United States Supreme Court. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Barker v. Wingo, supra. Barker rejected a rigid approach in favor of a flexible one to the troublesome problems created by trial delays by adopting a so-called "balancing test" to determine compliance with constitutional requirements. This test, applied by the trial court below, is to be applied to each speedy trial case on an ad hoc basis, and requires the consideration and weighing of four factors in evaluating a claim that an accused's right to a speedy trial has been violated. They are: length of delay, the reason for the delay, defendant's assertion of his right, and prejudice to defendant. These were only some of the factors which the court in Barker was able to identify as bearing on disposition of speedy trial claims. The list of factors referred to was not intended to be an exhaustive one but only illustrative of type of factors properly considered by a court in determining the merits of any speedy trial claim. Moore v. Arizona, supra, emphasized that none of these four factors was alone to be regarded as dispositive and thus dispensed with the frequent routine adhered to by many courts of searching for possible prejudice to a defendant resulting from any particular delay. Prejudice, therefore, can no longer be regarded as a necessary basis for a finding of a speedy trial violation. Strunk *492 v. United States, supra, merely re-emphasized the concept discussed at length in Barker that dismissal of an indictment was the only remedy available for a found violation of an accused's right to a speedy trial
In Smith, this court rejected defendants' claim that their rights to a speedy trial had been violated by a delay of approximately three and a half years between the return of the initial indictment and their motion to dismiss charges against them. It did so after applying the balancing test required by Barker, noting that the charges brought were complex in nature involving the conduct of several defendants in their official capacities, that some of the delay encountered resulted from attempts by the State to obtain additional evidence against these defendants and some awaiting the results of the appeal in that case. None of the defendants were hampered in defense of the charges as a result of the delay. We concluded, on balance, that the three and a half year delay complained of did not constitute violation of their right to a speedy trial. In the present case, the delay is almost three times as long, one charge against only one defendant is involved, and the reason given by the State for the delay bears no relation to the State's case against the defendant.
In our view, a trial eleven years after an indictment's return is, prima facie, not a speedy trial. To so characterize it is to empty of meaningful content a constitutionally guaranteed right which has been termed both fundamental and essential to all of concepts of due process and fair proceeding. Sharp differences between announced principles and actual practice are not and should not be long tolerated. In State v. Appice, 23 N.J. Super. 522 (App. Div. 1952), aff'd 13 N.J. 286 (1953), the court observed:
* * * Our courts speak of the right to a speedy trial as "one of the fundamental safeguards of the individual against the overreaching of the power of the State * * * grounded in the taproots of the common law." * * * If declarations like this are not to become anything more than high-sounding phrases, the burden is upon the State to dispose *493 of indictments with all reasonable dispatch. The long delay here is not consonant with constitutional safeguards and the minimum concepts of justice. It cannot be justified because of the pressure of the criminal trial calendar. [23 N.J. Super. at 530]
Notwithstanding the foregoing language, the court reluctantly refused to dismiss the indictment, then about 4 1/2 years old, because the accused had never made a demand for trial and failed to convince the court that his ability to defend had been impaired by the delay. The present case involves an 11-year delay and therefore presents this court with a renewed opportunity to bring our practice into harmony with routinely announced lofty constitutional principles. Failure to do this, in our view, can only result in the perpetuation of a sharp dichotomy between principle and practice, bringing in its wake disrepute to both.
The time has come for the State to accept primary responsibility for bringing indictments to trial with all reasonable dispatch. State v. Appice, supra. As noted in Barker v. Wingo:
* * * But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. [407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116]
In People v. Prosser, 309 N.Y. 353, 130 N.E.2d 891 (Ct. App. 1955), the court gave recognition to this allocation of responsibility now confirmed by Barker:
* * * It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial. [at 895].
No longer can New Jersey leave it to those accused of crime to press for trial of their own guilt. While a demand for prompt trial by an accused provides one means for assuring it. R. 3:25-2, and remains an important factor in determining whether the right to a speedy trial has been violated, it is *494 no longer the only available means by which his constitutional right to a speedy trial will be protected.
In the present case, the State seeks to excuse its long period of inactivity by reference to the fact that defendant had been sentenced to death for a murder conviction made final in 1965, nine years ago. The State candidly admits that it obtained inactive status in 1964 for the present indictment because of its view that the open indictment would probably expire wih defendant. It was only with the demise of the death penalty announced in State v. Funicello, supra, that gears were engaged to move this case for trial 11 years after return of the indictment. The trial court accepted this explanation for the delay as being a sensible one and sufficient to excuse the extended period of prosecutorial inactivity in this case. We disagree with this point of view.
This is not a case in which defendant's conduct caused or even contributed to the delay. He was not a fugitive, Morland v. United States, 193 F.2d 297 (10 Cir.1951); Shepherd v. United States, 163 F.2d 974 (8 Cir.1947), and did not involve himself in a series of time consuming legal maneuvers in order to stave off trial of his guilt. Fowler v. Hunter, 164 F.2d 668 (10 Cir.1947). Nor is this a case, such as Barker, where defendant had some reason to delay trial. In Barker, it will be recalled, the court suggested that Barker had been hoping for an acquittal of his accomplice whose testimony the state intended to use at trial, and that was the reason he had not objected to most of the many applications made by the state for continuances. In the present case neither the trial court nor the record suggests that defendant wished to delay his trial. The clear import of all that occurred below is that he was so preoccupied with the overriding concern of saving his own life, imperilled by the conviction on Indictment 185, that he gave no thought to the existence of Indictment 186.
The delay in this case was caused solely and exclusively by the State and represented a considered, intentional and *495 unequivocal course of action undertaken because imposition of the death penalty was felt to be a complete vindication of the public's interest in defendant's future, then viewed as brief. The quest for a second death-carrying conviction was deemed superfluous, involving a needless expenditure of public money and effort. Although no one can quarrel with the sensible expedience of the State's position in this regard, the State's concerns were not shared by defendant and had nothing to do with its case against him. The consequences of the unilateral and ex parte action taken by the State in the service of its own interest cannot, in justice, be visited upon this defendant.
The reason given by the State for the extended delay in this case is not entirely novel. In State v. Coolack, 43 N.J. 14 (1964), the prosecution had been delayed 12 years, inferentially because Coolack had been sentenced to a life term on another charge and the State had apparently regarded the public interest as having been fully served by imposition of that lengthy sentence. The charge was nonetheless dismissed despite absence of demand by the accused for trial, primarily because of the extraordinary length of the delay and the death of a witness, although that witness' testimony had been recorded in the other trial. While the court did not pass upon the sufficiency of the inferred reason for the delay, the dismissal of the indictment provides evidence of the court's opinion in that regard.
Again, in United States v. Chase, 135 F. Supp. 230 (N.D. Ill. 1955), the accused on conviction for murder has been sentenced to a life term which he was serving in Alcatraz. Another indictment for murder was therefore not pressed for trial. Twenty years later, the accused moved for trial or dismissal of the indictment. In the absence of a demand and on a presumption of prejudice stemming from the inordinate delay of 20 years, the court dismissed the indictment on speedy trial grounds. While the court did not pass upon the reasons for the delay, again its decision evidences its unwillingness *496 to accept such circumstances as a sufficient reason for so long a delay.
In People v. Prosser, supra, a case bearing remarkable similarity to the present one, the accused had been sentenced to a life term following pleas of guilty to several offenses. It was only after that sentence had been declared illegal and shortened, that the state attempted to move for trial another indictment for murder then six years old. In explaining the reason for the six-year delay, the prosecutor acknowledged that his predecessor thought there was nothing to be gained by further prosecution. Judge Fuld, speaking for a unanimous Court of Appeals, viewed this excuse as demonstrating not the "slightest `good cause'" for the six year delay and dismissed the indictment on speedy trial grounds. In the present case the delay was almost twice as long and, in our view, the excuse given provides an insufficient basis to deprive an accused of his conceded right to prompt adjudication of his guilt.
Moreover, it must be borne in mind that the State took steps, ex parte, to have defendant's case placed on the inactive list without any notice to him or his attorney, or the consent of either. Such an action evidences service of the State's interests only. Had the State given notice to defendant or his attorney, of the action it was taking, steps could have been taken at that time to force the matter to trial or dismissal. Since defendant was then under a sentence of death, and the State admittedly had no further interest in pursuing prosecution of Indictment 186 at that time, a dismissal would have been a distinct possibility. The ex parte action of the State in indefinitely shelving this indictment denied defendant the benefit of this possibility.
The court in United States v. Chase, supra, significantly noted a similar unilateral action taken by the prosecuting authorities in that case, and referred to Arrowsmith v. State, 131 Tenn. 480, 175 S.W. 545 (Sup. Ct. 1915), wherein it was noted:
*497 As we have seen, the orders entered on October 24, 1912, by which the several untried cases against Arrowsmith were "retired from the docket until the expiration of said sentence," were made in the absence and without the knowledge or consent of the accused, who was at the time an inmate of the state penitentiary, and without the knowledge or consent of his counsel * * *
The record discloses that no effort was made by the prosecution to put the accused on trial, though confessedly, there was sufficient time and opportunity therefor. The fact that the defendant was then incarcerated was no legal excuse for the delay, as has been observed.
Arrowsmith was conditioned so that he could not personally demand that his own trial be proceeded with; and without the knowledge of either himself or his counsel the court in legal effect, through the order, continued the cases for approximately two years  needlessly and vexatiously. [175 S.W. at 547].
Significantly, the State declined to move for outright dismissal of Indictment 186 although at the time of its ex parte application it had no present intention of moving that indictment for trial. Instead, its action in indefinitely shelving the indictment, thus keeping its options open, betrayed that intention by evidencing some equivocation as to future trial of this indictment. Clearly, defendant's interest in indefinite postponement of trial was manifest, and elemental fairness dictated that he should have been notified of the attempt.
Finally, with respect to the sufficiency of the reason given for the delay, it must be emphasized that the delay which resulted was entirely unnecessary. The trial the State now wishes 11 years after indictment, could have been had at any time with promptness and due expedition. The court in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), in setting forth guidelines for determination as to the reasonableness of a given delay noted:
* * * Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided  whether it was necessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, *498 lengthy delay, even in the interest of realizing an important objective, would be suspect * * * [Emphasis supplied]
Hence, in this case this court is faced with an indictment almost 12 years old, in which the delay in trial was caused intentionally by the State in furtherance of its own interests, without the knowledge or consent of the accused or his attorney, and without any real necessity for so long a delay. In these circumstances, without more, there should be little doubt that a trial of this matter would constitute clear violation of the accused's right to a speedy trial.
The trial judge found as a fact that defendant had not demanded trial, discrediting defendant's testimony that he had attempted to do so. We have no quarrel with this finding because there does exist substantial evidence in its support and we defer to the superior opportunity of the trial judge to evaluate credibility. The absence of a demand for speedy trial, although continuing to be a factor in determining speedy trial violations, no longer mandates the conclusion that the accused waived his right to one. Barker explicitly rejected the so-called demand-waiver rule permitting an inference that the accused waived his right to a speedy trial from his failure to demand one. 407 U.S. at 528, 92 S.Ct. 2191, 33 L.Ed.2d at 115. Waivers of fundamental rights are not to be lightly inferred from mere inaction, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and that rule has now been made applicable by Barker to the equally fundamental right to a speedy trial. Accordingly, those cases in New Jersey which suggest or hold that an accused waives his right to a speedy trial solely by failing to press for trial or which define this right solely in terms of the right to demand trial, no longer can be viewed as consonant with federal constitutional standards. See, e.g., State v. Von Atzinger, 81 N.J. Super. 509 (App. Div. 1963). An accused can waive his right to a speedy trial, but affirmative evidence of such a waiver must be shown. Mere inaction prior to trial, without more, no longer suffices.
*499 In the present case no evidence was produced tending to show that the accused had waived his right to a speedy trial of Indictment 186. The inference is clear that neither he nor his attorney gave it any thought, bending all efforts to the all-important objective of saving defendant's life. Both were free to assume, and in fact his attorney testified that he did assume, that Indictment 186 would never be tried. Such an assumption was fully justified in light of the State's candid admission that from the date the death sentence was imposed in 1963 until the Funicello decision in 1972, it had no intention of trying the case. Defendant and his counsel were therefore assuming what was in fact true, and they cannot now be faulted for not demanding a trial which all assumed would never be held. Certainly, the proofs adduced admit of no conclusion of waiver.
Finally, we arrive at consideration of whether defendant has been prejudiced by this eleven year delay in trial. Preliminarily, it must be noted that an affirmative showing of prejudice can no longer be regarded as a sine qua non to a finding of a speedy trial violation, Moore v. Arizona, supra, although its presence or absence continues to be a factor to be taken into account. Barker v. Wingo, supra. Moreover, where delay is as extended as it is in the present case, prejudice resulting therefrom can justifiably be presumed to exist. United States v. Simmons, 338 F.2d 804 (2 Cir.1964), cert. den. 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965); United States v. McIntyre, 271 F. Supp. 991 (S.D.N.Y. 1967); Hedgepeth v. United States, 124 U.S. App. D.C. 291, 364 F.2d 684 (1966). The very assumption of the Sixth Amendment is that unreasonable delays are by their nature prejudicial. Hedgepeth v. United States, supra.
In the present case, the trial judge concluded on the basis of testimony adduced that defendant was not prejudiced by the 11-year delay. In reaching this conclusion the judge apparently overlooked the fact that the bullet which constituted the essential link between defendant and Holden's *500 murder is no longer available, and that defendant's ability to contest the source of the bullet as coming from a gun found in his possession has been seriously impaired. So crucial is this evidence that without it it is doubtful that a grand jury would have indicted. Also, without mention is the fact that defendant's attorney's file has been lost and whatever material favorable to his defense, if there was any, can no longer be ascertained.
Moreover, the decision below fails to appreciate the immanence of prejudice in so long a delay which can only rarely be reflected on the record. Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2193. As noted in the case of United States v. Chase, supra:
The thought of ordering him to trial on this charge after a lapse of twenty years shocks the imagination and the conscience. While I have not been informed as to how many of the witnesses are available to either side, it can almost be judicially noticed that the passage of that length of time will have made some of them inaccessible. Even if two decades have left them alive and within the jurisdiction of this court, certainly their memories of those long past events are clouded. They could not be said after that length of time to be testifying to what they remember; they would be recalling something as in a dream, a kind of phantasmagoria, rather than an independent recollection. The human mind is so constructed that remembrance of even the sharpest experiences dulls with time. Witnesses, however honest, could not respond with any accuracy to cross-examination, and another important right would thus be lost to petitioner. [135 F. Supp. at 233]
The fact that the present case involves a delay of only 12 years instead of 20 does little to render these important insights inapplicable to this case.
The conclusion of the trial judge that the alleged alibi witnesses represented sheer invention on the part of defendant in order to obtain a speedy trial dismissal may indeed be a correct one. It takes not too much ingenuity on the part of one who has the rest of his life at stake to claim that a recently deceased person would have provided him with a complete alibi. Courts are alert to the possibility of contrivance of that kind. See State v. Appice, supra. The *501 disturbing aspect of this kind of adjudication, however, is that the court may also be wrong. Ordinarily, the presence or absence of an alibi is for jury determination, and the sufficiency of all defenses, not only that of alibi, to create a reasonable doubt as to a defendant's guilt is for jury determination after the evidence is heard and not for the court in advance of trial.
A pretrial search for evidence of prejudice frequently does involve the court in passing upon the materiality, relevance or credibility of some item of evidence, now missing, and its possible effect upon a jury's verdict. In close cases such a procedure may not be avoidable. But where the delay is as extraordinary as it is in this case and the occasion for the search for prejudice has been created by intentional conduct on the part of the State without notice to or consent of defendant or his attorney, such pretrial incursions into the factual validity of alleged defenses are unnecessary.
For all of the reasons stated herein, we reverse the order of the trial court and dismiss the indictment. Defendant is presently serving the balance of a life term. When he becomes eligible for parole it will be up to the parole authorities to determine whether "there is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." N.J.S.A. 30:4-123.14. Thus, the public interest can still be served by the parole board under the sentence defendant is now serving. State v. Coolack, supra.
NOTES
[*] The indictment was returned in January of 1963. The motion to dismiss was made returnable in May of 1973, or a period of approximately 10 1/2 years. Trial of the case, however, could not have been expected before September 1973 and, with the time required for resolution of the present appeal, could not be held until early in 1975, a period of 12 years after return of the indictment.