STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RALPH COOLACK, DEFENDANT-APPELLANT.

Argued May 5, 1964—Decided July 7, 1964.

*Mr. Edward F. Broderick* argued the cause for appellant (*Mr. Bernard F. Conway,* on the brief).

*Mr. Evan William Jahos,* Deputy Attorney General, argued the cause for respondent (*Mr. Francis X. Moore,* Deputy Attorney General, on the brief; *Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered

PER CURIAM. The question is whether two indictments for murder should be dismissed because defendant allegedly was not afforded a speedy trial. The trial court denied defendant's motion to dismiss and we granted him leave to appeal.

On December 3, 1949 defendant entered a tavern and in a matter of moments shot Arthur Poole, his wife Irene Poole and Homer Luhman. Arthur and Irene Poole died almost instantly, and Luhman succumbed several months later. Three separate indictments for murder were returned.

Defendant was tried for the murder of Arthur Poole. The verdict, returned on June 23, 1950, was murder in the first degree, and defendant was sentenced to imprisonment for life pursuant to the jury's recommendation.

On September 15, 1951 defendant was noticed for trial for the murder of Irene Poole. Defendant moved to dismiss that indictment and also the indictment for the murder of Luhman on the ground of double jeopardy. His motion was denied on December 4, 1951. *State v. Coolack,* 17 *N. J. Super.* 192 (*Cty. Ct.* 1951).

No further action was taken until June 12, 1963 when defendant made the motion to dismiss involved in the present appeal.

Defendant asserts the State's inaction deprived him of his constitutional right to a speedy trial. The rule in this State and the general rule elsewhere is that the right to a speedy trial is the right to move for such a trial and to have the indictment dismissed if the State fails to prosecute it at a time for trial fixed by the court. *State v. Masselli,* 43 *N. J.* 1 (1964), decided this day; *State v. Smith,* 10 *N. J.* 84, 93 (1952); *State v. Appice,* 23 *N. J. Super.* 522, 528 (*App. Div.* 1952), affirmed 13 *N. J.* 286 (1953), *cert.* denied 346 *U. S.* 939, 74 *S. Ct.* 380, 98 *L. Ed.* 427 (1954); *State v. O'Leary,* 25 *N. J.* 104, 111 (1957); *State v. Dandridge,* 37 *N. J. Super.* 144 (*App. Div.* 1955); *State v. Von Atzinger,* 81 *N. J. Super.* 509, 512–513 (*App. Div.* 1963); Annotation, 57 *A. L. R.* 2d 302, 306 (1958). Although the rule is sometimes stated in terms of "waiver," *i. e.,* that the failure to press for a trial evidences a waiver of the right, we prefer to say, in direct terms, that the right is simply to move for a trial date and for a dismissal if the State fails to proceed at the time fixed by the court.

We are not persuaded to depart from this statement of the constitutional right. It is the court, rather than the prosecutor, that controls the trial calendar, and the State and the defendant have the equal right to seek a trial date, at least after the expiration of the time period stated in *R. R.* 3:11–3(b):

"At any time after 6 months following the return of an indictment or the filing of an accusation, the Assignment Judge may direct that the trial of the indictment or accusation shall be moved upon a day specified. Upon failure of the prosecuting attorney to comply with such order, the Assignment Judge may order the indictment or accusation dismissed, which dismissal shall be the equivalent of a judgment of acquittal."

Defendant never moved for a trial.

Generally time favors defendants. At least most defendants think so, and the burden of proof being on the State, the common assumption is probably correct. Hence it is unusual for a defendant to press for an early trial. A case can be made for the view that the prosecution alone should be obliged to seek a trial date, but that approach involves considerable difficulty. Unless some express time limit were set, the result under that view would have to turn upon the existence of prejudice either as the sole test or as a factor to be weighed with the reasons for the State's delay. Prejudice could be an elusive thing in this setting, for it is easy to claim the loss of witnesses, *cf. State v. Appice, supra* (23 *N. J. Super.,* at *p.* 528), and *State v. Dandridge, supra* (37 *N. J. Super.,* at *p.* 148), and frequently that claim could not be resolved without also deciding the primary issue of defendant's guilt. It is at least a more certain and more workable rule to require a defendant to move for a trial date, and overall we see no real unfairness in the requirement. Nonetheless both in *Smith, supra,* 10 *N. J.,* at *p.* 90, and in *O'Leary, supra,* 25 *N. J.,* at *p.* 112, we intimated the possibility that a plain case of prejudice coupled with an unexplained delay of many years might require a dismissal of an indictment.

We believe the present case is exceptional and that the indictments should be dismissed in its special circumstances. The State offers no explanation for the delay and one rather suspects that long ago the prosecution decided the life sentence already imposed satisfied the public's interest. Several witnesses who testified at the 1950 trial are no longer available either because of death or mental incompetence. None of the witnesses was essential except Dr. Riggs, now deceased, the sole psychiatrist to testify in support of defendant's claim of insanity. It is true that his testimony could be read. It is also true that a jury rejected that testimony. Still defendant would be entitled to another go at his claim of insanity and upon that issue the written word would hardly equal live testimony. Thus we

know that defendant lost an important witness; we are not asked to accept the mere say-so of a defendant that someone now deceased would have supported him. Finally, defendant is already under a sentence for life, and although upon a second conviction, a consecutive sentence of life could be imposed, *State v. Maxey,* 42 *N. J.* 62 (1964) (we assume that no one would consider a death sentence at this late date), still the public interest can be fully served by the parole board under the existing sentence.

*N. J. S. A.* 30:4-123.14 provides:

"No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned while under sentence, but only if the board is of the opinion that there is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society."

In determining whether release on parole is compatible with the welfare of society, the parole board must take into account the totality of the prisoner's conduct. There is no question whatever that defendant killed Mrs. Poole and Mr. Luhman; the sole issue at the 1950 trial was the claim of insanity.

In view of these circumstances we think it would be unreasonable to move the remaining indictments at this late date. The order is set aside and the matter remanded with directions to dismiss the indictments.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—None.