131 N.J. Super. 354 (1974)
330 A.2d 29
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH SMITH, MICHAEL RYTELEWSKI, HERBERT DOLAN AND JAMES W. HYRES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1974.
Decided December 6, 1974.
*357 Before Judges MICHELS, MORGAN and DEMOS.
Mr. Joseph J. Rodgers, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Robert E. Levy argued the cause for appellant Smith.
Mr. Paul J. Feldman argued the cause for appellant Rytelewski (Mr. Charles Frankel, attorney).
Mr. Theodore J. Labrecque, Jr. argued the cause for appellant Dolan (Messrs. Labrecque, Parsons & Bassler, attorneys).
Mr. James J. McLaughlin argued the cause for appellant Hyres (Messrs. McLaughlin, Abbotts & Cooper, attorneys; Mr. Roland R. Formidoni, on the brief and on the appendix).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendants, public officials of Jackson Township, appeal from an order, entered October 26, 1973, dismissing without prejudice Indictment 289-71 charging them in 14 counts with conduct amounting to extortion, misconduct in office and conspiracy to commit some or all of those offenses. Defendants Rytelewski, Dolan and Hyres also appeal, pursuant to leave granted, from an interlocutory order of April 19, 1974 denying their motions for a judgment of acquittal with respect to Indictment SGJ 14-73-2, charging them with the same offenses with which they were charged *358 in Indictment 289-71 which had previously been dismissed without prejudice. With respect to both indictments defendants contend that their rights to a speedy trial guaranteed by N.J. Const. (1947), Art. I, par. 10, and the U.S. Const., Amends. VI and XIV, and implemented in R. 3:25-2, have been violated by the orders from which they are here appealing.
The events germane to this appeal commenced on March 3, 1971 when the Ocean County grand jury returned Intictment 158-70 against five defendants charging them with the offenses described above, which were alleged in the 14-count indictment to have occurred between December 1, 1969 and August 1, 1970. The matter was first scheduled for trial on October 18, 1971 and then was rescheduled for October 26, 1971. Although all counsel appeared on both dates, the case was not tried.
Thereafter, the State resubmitted the case to the grand jury, which on January 14, 1972 returned a superseding indictment, No. 289-71, virtually identical to the previous indictment, and one of the two indictments here under consideration. The previous indictment, 158-70, was not, however, ordered dismissed until April 19, 1972, i.e., after the trial court, at the State's request, had dismissed the superseding indictment No. 289-71, without prejudice.
The case was next listed for trial on February 14, 1972, this time under its new designation, No. 289-71, but was again not tried. It was thereafter scheduled for trial on March 27, 1972, not moved, and relisted for April 10, 1972. On that date the State requested an adjournment indicating that it was unprepared to proceed, and the court, over objection of defendants Dolan and Hyres, adjourned the matter until Monday, April 17, 1972, following a conference with the assignment judge.
On April 14, 1972, three days before the peremptorily scheduled trial date, the State moved to have Indictment No. 289-71 dismissed without prejudice on the ground that new developments in the case required further investigation. *359 All defendants, except Smith, objected, requesting instead judgments of acquittal. The court granted the State's motion on that date, although the order reflecting this dismissal was not entered until October 26, 1973, almost 18 months after the decision granting it. Defendants appeal from this order, contending that its entry violated their constitutionally guaranteed rights to a speedy trial.
All adjournments were secured by the State. No defendant ever requested an adjournment and at every scheduled trial date all defense counsel appeared presumably ready to proceed with the trial.
Following the dismissal of April 14, 1972 the matter remained in a quiescent state. On May 16, 1973, 13 months later, the state grand jury returned Indictment SGJ 14-73-2 charging defendants with having committed the same offenses as were charged in the preceding two indictments. No dates were assigned for the trial of this indictment, and on April 19, 1974 defendants moved for a judgment of acquittal. The court denied this motion and, pursuant to leave granted, defendants appeal from the order. The appeals concerning the two orders were consolidated for consideration by this court.
Defendants contend that from the inception of the charges against them in March of 1971, when Indictment No. 158-70 was returned, they have been subjected to a series of delaying tactics on the part of the State precluding disposition of these charges for about a 3 1/2-year period of time. They point to the promptness with which charges were brought and the State's unconscionable delay in seeking their resolution. Time and time again, defendants had appeared for a series of scheduled trial dates, ready and eager for a trial of the charges levelled against them, only to be met by one excuse or another by the State as to why the case could not conveniently be tried. As a result they have been forced to live under a humiliating penumbra of suspicion and distrust generated by these unresolved charges which question their personal and professional integrity, suitability for public *360 service and their general worth as individuals. In short, they contend that the interests sought to be protected by the right to a speedy trial have been undermined and that, therefore, the charges should be dismissed.
Although an accused's right to a speedy trial has been held to be a fundamental one, the criteria by which its scope is to be judged have only recently been redefined. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Klopfer v. North Carolina, 386 U.S. 213, 87 Sup. Ct. 988, 18 L.Ed.2d 1 (1967). In Barker the court observed the "impossibility" of determining with precision when an accused's right to a speedy trial has been denied. How long is too long, the central inquiry, cannot be answered by sole reference to the lapse of a specified amount of time between indictment and trial, or lack of trial.
We find no constitutional basis for holding the speedy trial right can be quantified into a specified number of days or months. [407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113]
Thus, in Barker a delay of five years between indictment and trial was held not violative of Barker's right to a speedy trial, where as in Klopfer, under an unusual state procedure, a delay of 18 months was held violative. In Strunk the lower court held that a delay of ten months violated defendant's right to a speedy trial, although the Supreme Court had no opportunity to pass on the correctness of that determination because the state had not appealed it.
The courts in New Jersey have experienced a similar inability to calculate the extent of tolerable delay with anything approaching mathematical exactitude. Thus, in State v. Coolack, 43 N.J. 14 (1964), an indictment charging murder was ordered dismissed after a delay of approximately 12 years where witnesses had died in the interval. In State v. Smith, 10 N.J. 84 (1952), the court refused dismissal following a *361 delay of approximately six years between indictment and the motion to dismiss. In State v. O'Leary, 25 N.J. 104 (1957), the court refused to vacate a conviction based upon a trial held 22 years after the return of an indictment. Application for dismissal based upon a nine-year delay between indictment and trial was denied in State v. Von Atzinger, 81 N.J. Super. 509 (App. Div. 1963).
Rejecting a rigid approach in favor of a flexible one to the troublesome problem created by trial delays, the court in Barker adopted a so-called "balancing test" to determine compliance with constitutional requirements. This test is to be applied to each speedy-trial case on an ad hoc basis, and requires the consideration and weighing of four factors in evaluating a claim that an accused's right to a speedy trial has been violated. They are: length of delay, the reason for the delay, defendant's assertion of his right, and prejudice to defendant. These were only some of the factors which the court in Barker was able to identify as bearing on disposition of speedy trial claims. The list of factors referred to was not intended to be an exhaustive one but only illustrative of type of factors properly considered by a court in determining the merits of any speedy trial claim. Each of these, then, will be discussed in the following sections of this opinion in the context of the present case, and the changes in New Jersey law necessarily wrought by Barker v. Wingo, supra, will be identified in appropriate points of the discussion.
First, confining discussion for the moment to the decision of April 14, 1972 dismissing Indictment No. 289-71 without prejudice, the time lapse between the indictment and the dismissal without prejudice can be viewed as three months, if measured from the date on which the superseding indictment, No. 289-71, was returned, or 13 months if measured from the date the superseded indictment, No. 158-70, was returned. The State calculates the time lapse by reference to the indictment to be moved (three months), whereas defendants compute the time lapse by reference to the inception *362 of charges made against them, whatever their form (13 months). Since both the superseded and superseding indictments were both outstanding against defendants on the date the trial court dismissed the superseding indictment without prejudice, we conclude that both indictments, charging the same offenses, must be considered as one for this purpose, and we therefore conclude that a 13-month lapse of time intervened between indictment and the last scheduled trial date for Indictment No. 289-71.
We have termed this 13-month lapse of time between indictment and the dismissal as a time lapse and not a delay because, quite obviously, trial of matters charged in an indictment cannot be held immediately following its return. Time must be allotted for arraignment, retention of counsel, investigation, discovery and preparation for trial, and the like. In addition, some consideration must be given to pressures of the trial calendar. Thus, some undefined period of time following indictment cannot, with justice, be considered delay in assessing the validity of any speedy trial claim. The permitted period of time, here too, cannot be quantified with respect to all cases. The special circumstances inherent in each case being considered must govern in this regard. Simple street crimes involving only one defendant and few witnesses may take less time to bring to trial. Complex criminal charges, such as the ones here involved, concerning multiple defendants and multiple but related charges, may take a substantially longer period of time to reach the point of trial readiness. Barker v. Wingo, supra.
The first date upon which Indictment No. 289-71 (then No. 158-70) was scheduled for trial was October 18, 1971 and, following an adjournment requested by the State, was rescheduled for October 26, 1971. No defendant sought any earlier trial date. Thus, in adjudging the validity of the April 14, 1972 dismissal without prejudice, the "delay" as of that time must be regarded as no more than six months.
Passing now to the second aspect of the "balancing test" to be applied, the reasons given by the State to justify this *363 delay are less than wholly satisfactory, although special circumstances did exist to at least partially explain what happened. First, the State refers to the fact that it became necessary to replace the county prosecutor, who had been charged with responsibility for preparation and trial of the case, with a deputy attorney general because of a conflict of interest which had arisen or become identified. That substitution required a new attorney to familiarize himself with a file in this complex and difficult case of some public importance. According to the best estimates of all parties, this substitution occurred in March or April of 1972, shortly before the dismissal here being appealed from. Furthermore, in its application to dismiss Indictment No. 289-71, the State informed the court of new information concerning the case which required further investigation. During oral argument on appeal the State represented to this court that what was really involved was the possibility of one of the defendants appearing as a witness for the State against his codefendants. Following the dismissal, the State engaged in several months of negotiation with this witness with ultimate lack of success. Nonetheless, the State felt obliged to make the attempt at the time, and accordingly sought and obtained the dismissal without prejudice.
With respect to the third factor to be considered in applying the balancing test, defendants' assertion of the right to a speedy trial, the State contends that defendants' failure to move for a date certain after the indictment was six months old, pursuant to R. 3:25-2, forfeited their right to complain of a trial delay. We disagree with that proposition insofar as it suggests that a defendant may only assert his demand for a speedy trial under the rule by way of formal motion. R. 3:25-2 provides:
At any time after 6 months following the return of an indictment or the filing of an accusation, the Assignment Judge may, on his or on defendant's motion, direct that the trial thereof be moved upon a specified day. Upon failure of the prosecuting attorney to do so, the Assignment Judge may order the indictment or accusation dismissed. The dismissal shall be equivalent to a judgment of acquittal.
*364 The foregoing rule does not require formal motion by an accused for a date certain as a condition to a discretionary dismissal equivalent to an acquittal. The assignment judge may set such a date, and failure of the State to move the case for trial on the appointed date permits the assignment judge to exercise his discretion as to whether the case should be dismissed. Moreover, Barker clearly implies that an accused's demand for prompt trial can be asserted by objection made to continuance requested by the State, if he otherwise presents himself as ready, able and willing to proceed.
We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances * * *. [407 U.S. at 536, 92 S.Ct. at 2195, 33 L.Ed.2d at 120]
R. 3:25-2 should, therefore, now be read to permit compliance with its terms by a defendant's objection to the State's request for an adjournment after trial date has been set by the assignment judge.
Hence, where an assignment judge undertakes on his own motion to fix a date certain for trial, such action relieves defendant of any obligation to file a formal motion seeking the same trial date. Procedural requirements are not to be construed to require superfluous applications. An accused is entitled to rely on a peremptory trial date set by the assignment judge for the county. Objection to an adjournment of a trial after such a date has been set evidences his demand for a prompt trial sufficient to satisfy the requirements of R. 3:25-2 if he otherwise shows himself ready and able to proceed to trial on the scheduled date.
Barker does not mandate the invalidity of R. 3:25-2. This rule merely sets forth one basis upon which speedy trial claims can be evaluated, and it possesses continued validity, despite Barker, as long as it is not regarded as the only basis for adjudicating speedy trial claims. A defendant proceeding under R. 3:25-2 enjoys the advantage of shifting to the State the burden of adequately and suficiently *365 explaining reasons for a requested delay where trial date has been set by the assignment judge. In the absence of such an explanation the trial court's discretion would, in most circumstances, require dismissal.
To dispel any possible confusion with respect to the effect of Barker on pre-existing New Jersey decisional law, however, it must be noted that the oft-repeated rule (sometimes referred to as the demand-waiver rule), that an accused waives his right to a speedy trial by failing to demand one, is no longer the law. Barker explicitly held:
We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court

[407 U.S. 529]
to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection. [407 U.S. at 528-529, 92 S.Ct. at 2191, 33 L.Ed.2d at 115-116]
It is, therefore, no longer valid to define an accused's right to a speedy trial simply in terms of his right to demand one. See, e.g., State v. Masselli, 43 N.J. 1 (1964); State v. Coolack, supra; State v. Smith, supra. No new definition of this right was offered in Barker, and we have been no more successful in devising one that would be completely acceptable in all possible circumstances. The right is a relative one, to be defined only in terms of the decisions adjudicating claims of its violation, each requiring a functional analysis of the right in the context of each case presented and with respect to the several suggested considerations described in Barker. *366 Barker described "the speedy trial" right as being "slippery," "amorphous" and "vague," but the consequent difficulties attendant upon its enforcement do not in the least detract from the vital and fundamental role it fills in protecting an accused against unfairness in trial procedure stemming from delays between indictment and trial.
Despite verbal adherence to the rule implying a waiver of a defendants right to a speedy trial from his failure to demand one, the New Jersey courts have not, in their decisions, always been that restrictive. In State v. Coolack, supra, for example, a 12-year indictment charging murder was dismissed in absence of any demand for a speedy trial because of a finding that the death of witnesses had prejudiced defendant in defending against the charge. In State v. Slobiski, 100 N.J. Super. 590 (App. Div. 1968), a dismissal of an indictment following a three-year delay was upheld as a proper exercise of the court's inherent power to control its own calendar. Even in State v. O'Leary, supra, where the question of a 22-year indictment was raised following trial and conviction, the court refused to reverse the conviction on speedy-trial grounds because defendant had not even claimed prejudice from the delay, and the court, on its own inquiry, was unable to perceive any. Failure of the defendant to make demand during the period of delay, although certainly regarded as a factor, as it was in Barker, was not dispositive.[1]
There have, however, been several cases in this State in which the failure of the accused to demand trial has been reluctantly regarded as virtually dispositive of his speedy trial right. State v. Smith, supra, provides the best example *367 of rigid adherence to the demand-waiver rule. In that case the court refused dismissal of a six-year old indictment because defendant had failed to move for an order fixing a date certain for trial, although the record did suggest that he had made more informal requests for trial. The decision in State v. Von Atzinger, supra, was based squarely upon State v. Smith, supra, and the court refused to honor defendant's motion for dismissal of the 3 1/2-year old charge because demand had not been made for a date certain. In State v. Dandridge, 37 N.J. Super. 144 (App. Div. 1955), a delay of nine years was tolerated primarily because of a failure to demand trial, although the decision did note that no prejudice had been shown. In State v. Appice, 23 N.J. Super. 522 (App. Div. 1952), aff'd 13 N.J. 286 (1953), the court was constrained to deny defendant's claim of a speedy trial violation on the basis of his failure to demand trial plus absence of prejudice, despite its observation that "[t]he long delay here [4 1/2 years] is not consonant with constitutional safeguards and the minimum concepts of justice." Id. at 530.
To the extent that these cases and others like them rest decision upon a defendant's implied waiver of his right derived from his failure to demand prompt trial, they no longer represent the law and should be abandoned as precedent.
In the present case the record clearly discloses that defendants vigorously objected to the adjournment sought by the State on April 10, 1972 and to the dismissal without prejudice sought three days before the next scheduled trial date, and such objections constitute in our view demands for trial although made only seven days before the dismissal complained of.
Finally, with respect to the last factor to be considered in applying the balancing test, prejudice to the defendants,[2] defendants candidly admit, even as of the September *368 1974 argument date, that they know of nothing which has occurred to hamper their ability to defend against the charges made. The only prejudice claimed is by defendant Hyres, who has submitted affidavits to this court attesting to adverse economic and professional consequences to him flowing from his continued exposure to serious criminal charges. These, however, by their very terms refer to events occurring May of 1973, more than a year following the decision of which he now complains,[3] and they cannot therefore be considered in evaluating whether his right to a speedy trial was violated by dismissing Indictment No. 289-71 more than a year before. After careful consideration of the factors discussed above, we are forced to conclude that defendants' rights to a speedy trial were not violated by the order dismissing Indictment No. 289-71 without prejudice. The delay was not an inordinately long one, even when measured from the inception of the charges and not from the return of the indictment dismissed. The charges are multiple and complex, and the conduct of several defendants is involved. Circumstances did intervene to at least partially explain and justify the delay. Defendants did not vigorously assert their demands for a prompt trial until *369 shortly before the dismissal complained of. Finally, defendants admit they have not been prejudiced in their ability to defend against the charges.
We reach the same conclusion with respect to the appeal from the order of April 19, 1974 denying defendants' motion for a dismissal of Indictment SGJ 14-73-2, with prejudice. The state grand jury indictment was returned on May 16, 1973, almost 13 months after the decision dismissing the prior indictment without prejudice. During that hiatus defendants were free of all charges relating to this matter, although they continued to live with the persistent threat of a revived prosecution for these offenses because of the nondispositive nature of the prior dismissal. The motion for an order dismissing that indictment was brought less than a year after the indictment's return, during which time defendants made no effort to secure or demand a prompt trial. To the contrary, according to representations made to this court during oral argument, defendants were content to await the result of the appeal from the prior order of dismissal without prejudice which was then pending, and that is why Indictment SGJ 14-73-2 was not moved for trial.[4] They were, in short, hoping that there would be no trial. They are in no position to complain that the State acquiesced in this course of conduct.
The affidavits submitted by defendant Hyres attest to economic loss stemming from the return of Indictment SGJ 14-73-2 rather than from any delay in disposing of this or the previous indictments. At any rate, the absence of prejudice or its presence in the form of adverse economic consequence deos not constitute a significant basis for the present decision.
*370 By this decision we hold only that under all the facts and circumstances of this case and in accordance with federal constitutional standards, defendants' rights to a speedy trial have not been violated by the orders appealed from. We do not wish to be understood, however, as condoning what occurred in this case. The charges against these defendants were brought over 3 1/2 years ago and have yet to be disposed of. It is true that for over a year of that period of time, no charges were pending and there were therefore no charges to be tried. It is also true that during a substantial part of that time the State and defendants were awaiting resolution of this appeal. Continuing investigation by the State in hopes of strengthening its case against defendants also accounts for some part of the delay. Nonetheless, the net result to defendants and to the public is that charges arising out of conduct alleged to have taken place in 1970 have yet to be resolved. We therefore take this opportunity to stress the imperative necessity of disposing of all criminal charges with as much dispatch as is reasonably possible in the circumstances of the particular case. Where such charges cast doubt upon the integrity and honesty of public officials in their official calling, the necessity for prompt disposition becomes even more manifest. Considerations of simple humanity and compassion toward persons so charged, as well as the dictates of fundamental justice and the public need to obtain prompt resolution of such charges, require the State to press these matters for trial with all deliberate speed. It is as much the State's obligation to dispose of charges expeditiously as it is to bring them, and when the charges are of such a nature as to expose those subject to them to public scorn, embarrassment and adverse financial consequences, any dereliction in the State's duty in this regard warrants disapproval.
The orders of October 26, 1973 and April 19, 1974 are affirmed and the assignment judge is directed to schedule trial with all reasonable dispatch.
NOTES
[1] The court ruling: "* * * Nevertheless, [despite absence of demand for trial] under the highly unusual circumstances present here, the slightest proof of embarrassment occasioned by the delinquency of the prosecution might well, I am sure, have [altered] our decision in O'Leary's favor." [25 N.J. at 112; emphasis supplied]. Even this quest for an affirmative showing of prejudice as a necessary condition to a dismissal on speedy trial ground is now eliminated under Moore v. Arizona, supra.
[2] The New Jersey courts have consistently considered claims of prejudice resulting from a delay between indictment and trial, even when applying the demand-waiver rule. State v. Coolack, supra; State v. O'Leary, supra; State v. Dandridge, supra; State v. Appice supra. Although prejudice resulting from a delay is a factor mentioned by Barker to be considered in determining speedy trial claims, an affirmative showing thereof is not a necessary element in the proof of denial of the constitutional right to a speedy trial. In short, a violation of an accused's right to a speedy trial can be proven even in the absence of a showing of prejudice.

Moreover, prejudice to a defendant resulting from delay is no longer confined to inability or lessened ability to defend on the merits. Prejudice can also be found from employment interruptions, public obloquy, anxieties concerning the continued and unresolved prosecution, the drain on finances, and the like. Moore v. Arizona, supra.
[3] We are evaluating the order entered on October 26, 1973 as of the date the court's decision was orally rendered, some 18 months earlier. No additional applications were made to the court between those two dates, and we regard the written order as merely reflective of a decision already made and relied upon by the parties.
[4] The record, however, discloses some activity with respect to SGJ 14-73-2. Defendants were apparently pursuing discovery, and in connection therewith made applications to the court. There is no indication that any date was assigned for the trial of the matter or that defendants took any steps to obtain a date for trial.