# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3580-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

S.A.B.,[1]

     Defendant-Appellant.

_____

Submitted November 7, 2024 – Decided January 13, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-02-0140.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

---

[1] We use initials to identify the defendant and others to protect the identity of a person found to be a child victim of sexual assault or abuse. R. 1:38-3(c)(9), (12).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant S.A.B. appeals from an April 28, 2023, order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

After a jury convicted defendant of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), the court sentenced him to a five-year custodial term, with two and one-half years of parole ineligibility. We affirmed defendant's conviction and sentence on direct appeal. See State v. S.A.B., No. A-3231-18 (App. Div. June 15, 2021), certif. denied, 248 N.J. 482 (2021).

Defendant's convictions stem from repeated sexual assaults which occurred on diverse dates between March 1, 2014, and June 30, 2014, when the victim, B.H., babysat his children. We detailed the relevant procedural history and trial evidence supporting defendant's convictions in our prior opinion, which we incorporate here. We restate only those relevant facts necessary to place our opinion in context.

B.H. began attending youth group activities conducted by the Eternal Life Christian Center Church when she was in fifth grade. At that time, defendant volunteered as a leader in the youth group and would give sermons at bible study meetings and chaperone outings and retreats. In October 2013, after B.H. stopped attending those youth group activities, defendant frequently contacted her to rejoin the program. B.H. testified she and defendant spoke on the phone several times per week and regularly exchanged text messages, as she viewed him as a mentor with whom she could discuss her personal issues, the youth group, and her relationship with God. By December 2013, B.H. testified she and defendant spoke frequently about sex as a "pretty normal" part of their conversations.

B.H. resumed attending youth group activities in January 2014, where she saw defendant often and he would occasionally drive her home. In February 2014, defendant asked B.H. to babysit his children, which she did on approximately six to eight occasions between March and June 2014. On her second visit to defendant's home, he motioned for her to follow him into a guest bedroom, where he told B.H. he received visions from God that she "was hurting" and he could help her "become closer to God" if they reenacted his visions. B.H. stated he would position her body consistent with his "visions,"

A-3580-22

lay on top of her, and "perform movements that [were] basically [defendant] having sex with [her] with [their] clothes on." According to B.H., this conduct occurred each time she babysat for defendant.

At trial, B.H. described an incident where defendant again engaged in similar behavior, but the simulated sex was rougher and longer in duration, resulting in B.H. developing a rugburn. She did not inform defendant of her injury. B.H. instead photographed the burn, which left a scar.

B.H. testified about another incident where, while home alone, defendant told B.H. to call her mother, M.B., about dropping something off at her house. When defendant arrived, B.H. informed him M.B. was on her way home and she asked that he wait outside. Defendant told B.H. to tell her mother he needed to use the bathroom, proceeded inside, instructed B.H. to lay down on her bed, and engaged in the same type of simulated sex as previously described.

B.H. stopped babysitting for defendant in June 2014 and informed A.S., a leader at the church, about the prior incidents. A.S. testified she immediately reported the incidents to the church pastor, his wife, and M.B. M.B. took B.H. to the South Brunswick Police Department, where officers took an initial report and B.H. gave a statement.

A-3580-22

As part of the investigation, B.H. agreed to call defendant while officers recorded the call. Defendant did not accept responsibility for the rugburn or incriminate himself during the call. M.B. also consented to a forensic investigation of B.H.'s phone, which revealed sixty-one text messages sent between defendant and B.H., two photographs of the rug burn, and nine video calls from defendant to B.H. Defendant was later arrested.

On February 1, 2017, a Middlesex County grand jury returned superseding indictment No. 17-02-00140, charging defendant with six offenses, three of which pertain to B.H.: third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a); fourth-degree criminal sexual contact; and second-degree endangering the welfare of a child. Prior to the superseding indictment, the grand jury issued an initial indictment, which defendant moved to dismiss and sever. With respect to the superseding indictment, defendant again moved to dismiss and sever the charges. The court denied his motion to dismiss but severed the charges to the extent they addressed the other alleged victim and downgraded the endangering the welfare of a child charge to a third-degree offense.

The court also denied defendant's motion to permit him to cross-examine B.H. as to her sexual history and denied the State's motion to admit N.J.R.E.

404(b) evidence concerning defendant's alleged conduct with another victim. Defendant attended each of those proceedings.

The State called nine witnesses at trial, including B.H., M.B., A.S., and various law enforcement officers. Defendant did not testify but presented testimony from Barbara Wolf, M.D., who was qualified as an expert in the field of forensic pathology, and testified about the photos that B.H. took of her back. She stated that the injury shown in the photos was not consistent with a rug burn because such a burn would not be nearly perfectly round, as depicted in the photos. Dr. Wolf also opined that the injury shown in the photos was in the small of the back, and it was unlikely a rug burn would occur at that location.

Additionally, the State and defense counsel agreed to play a redacted version of the recorded phone call. The State, however, inadvertently played a brief segment of the original recording. The judge excused the jury, and defense counsel moved for a mistrial arguing the jury heard a statement suggesting the defendant had committed crimes or other bad acts with another victim. The trial judge denied defendant's motion and discussed possible curative instructions with counsel. Defense counsel did not propose an instruction and renewed his motion for a mistrial. The judge denied defendant's application, played a

redacted version of the phone call, and instructed the jury to rely only on the redacted version.

As noted, the jury convicted defendant of fourth-degree criminal sexual contact and third-degree endangering the welfare of a child and we affirmed defendant's convictions and sentence. In our opinion, we rejected defendant's arguments that: 1) he was denied due process and a fair trial because the court erred in failing to declare a mistrial; 2) the court erred in applying the Rape Shield Law, N.J.S.A. 2C:14-7, excluding cross-examination on B.H.'s prior sexual conduct, which defendant argued, was critical to show she had a motive to fabricate the allegations against defendant; 3) the court erroneously admitted improper testimony by two of the detectives who investigated the allegations, which defendant claimed improperly bolstered B.H.'s credibility; and 4) the court failed to comply with sentencing guidelines.

Defendant thereafter filed the instant timely PCR petition, supported by a brief and certification, alleging both his trial and appellate counsel provided ineffective assistance. Defendant also submitted his own arguments pursuant to State v. Webster, 187 N.J. 254 (2006).

Defendant argued his trial counsel was ineffective because he failed to assert his constitutional right to a speedy trial under the Barker v. Wingo, 407

U.S. 514, 530 (1972) four-factor test[2] and his counsel's failure to file such an application caused him to have to "wait over four years to finally have [his] day in [c]ourt" notwithstanding "repeated requests of [his] attorney to get [his] case resolved." He also attested his attorney failed to: 1) "pursue[] any defenses to help mitigate [his] guilt[] or to help procure a more favorable plea offer," 2) conduct an adequate investigation by not "tak[ing] even the minimal preparatory step of consulting a forensic doctor" to prove the rug burn on B.H.'s back could not have occurred the way B.H. described, 3) effectively cross-examine the State's witnesses by not "focus[ing] on the main issue in the case," defendant's guilt, or attempting to "impeach the witness's credibility," and 4) prepare him for trial by neglecting to "advise [him] of developments in the case, such as adjournments and . . . discuss[] a possible defense."

---

[2] The four <u>Barker</u> factors are: 1) length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant.

Defendant also claimed the cumulative effect of the errors deprived him of his right to a fair trial. Lastly, defendant argued his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness on direct appeal.[3]

The PCR judge, who was also the trial judge, denied defendant's application and entered a conforming order on April 28, 2023. In an oral decision issued the same day, the judge rejected all of defendant's counseled and pro se arguments because defendant failed to satisfy either of the two prongs set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Further, the PCR judge held defendant's claim against appellate counsel was without merit, and his failure to satisfy Strickland's two-part test on any of his claims rendered his cumulative error argument meritless.

This appeal follows in which defendant raises the following arguments:

> Point I.
>
> THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY . . . DEFENDANT'S PETITION FOR [PCR] BECAUSE . . . DEFENDANT'S TRIAL ATTORNEY WAS

---

[3] Before us, defendant does not reprise all of the arguments he raised before the PCR court and we deem those unbriefed arguments waived. See Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) ("[A]n issue not briefed is deemed waived.").

INEFFECTIVE FOR FAILING TO ASSERT . . . DEFENDANT'S RIGHT TO A SPEEDY TRIAL.

Point II.

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY . . . DEFENDANT'S PETITION FOR [PCR] BECAUSE . . . DEFENDANT'S TRIAL ATTORNEY DID NOT CONDUCT AN ADEQUATE INVESTIGATION

Point III.

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY . . . DEFENDANT'S PETITION FOR [PCR] BECAUSE . . . DEFENDANT'S TRIAL ATTORNEY DID NOT EFFECTIVELY CROSS-EXAMINE THE STATE'S WITNESSES.

Point IV.

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY . . . DEFENDANT'S PETITION FOR [PCR] BECAUSE . . . DEFENDANT'S TRIAL ATTORNEY DID NOT ADEQUATELY PREPARE . . . DEFENDANT FOR TRIAL.

Point V.

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY . . . DEFENDANT'S PETITION FOR [PCR] BECAUSE . . . DEFENDANT'S REMAI[N]ING CLAIMS, WHEN CONSIDERED IN THE CONTEXT OF . . . DEFENDANT'S TRIAL COUNSEL'S REPRESENTATION AS A WHOLE, ESTABLISH A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

10

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the assistance of counsel in his or her defense. The right to counsel includes "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland, 466 U.S. at 686).

In Strickland, the Court established a two-part test to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687. The Strickland test was later adopted by our Supreme Court as the standard under our state constitution in State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and

11

that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving [their] right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)). A failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

A.

Defendant first argues the PCR court erred by rejecting the claim his trial counsel was ineffective by failing to assert his constitutional right to a speedy trial. He contends the over four-year delay between arrest and trial is "inexplicable" in what he argues is a "one-witness case" which lacked "fingerprints[,] . . . fiber analysis[,] . . . [or a] waiting period for DNA results." Defendant also asserts the delay was unnecessary as the "evidence was gathered by the date of the defendant's arrest" and there was no need to determine the identity of the suspect. He further argues application of the Barker v. Wingo factors support a finding his counsel's failure to assert his rights to a speedy trial constitute ineffective assistance. We are unpersuaded.

"The Sixth Amendment protects a defendant's right to a speedy trial after arrest or indictment." State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)). The Barker four-part standard must be applied to determine when a violation of a defendant's right to a speedy trial contravenes due process. A court applying the Barker standard must consider and balance the four factors, State v. Tsetsekas, 411 N.J. 1, 8 (App. Div. 2009), based on a "case-by-case analysis" because the "facts of an individual case are the best indicators of whether a right to a speedy trial has

been violated," State v. Cahill, 213 N.J. 253, 270-71 (2013). "But the question of how long" a delay of a trial is "too long 'cannot be answered by sole reference to the lapse of a specified period of time.'" State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)).

Defendant bore the burden of presenting competent evidence establishing counsel's performance was deficient and there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. Gaitan, 209 N.J. at 350. Where a defendant claims counsel was ineffective by failing to file a motion, it must also be shown the motion would have been meritorious. See State v. O'Neal, 190 N.J. 601, 619 (2007) (holding "[i]t is not ineffective assistance of counsel for defense counsel not to file a meritless motion"); see also State v. Worlock, 117 N.J. 596, 625 (1990) (finding "[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel").

Defendant's claim his counsel's performance was deficient by failing to file a speedy trial motion is unpersuasive because there was not a reasonable probability a motion to dismiss on speedy trial grounds would have been granted had it been made by counsel. Other than arguing in a conclusory fashion that

14

the four-year delay between arrest and trial warranted the filing of a speedy trial motion, defendant failed to demonstrate a reasonable probability a dismissal motion would have been successful.

As the court PCR court noted, in the two- and one-half years between defendant's arrest on or about June 29, 2014, and the grand jury's return of the superseding indictment on February 1, 2017, the grand jury returned an initial indictment, which defendant moved to dismiss and sever. After the grand jury returned the second indictment, defendant again moved to dismiss and sever, moved to permit evidence of B.H.'s sexual history, and moved to compel the South Brunswick Board of Education to produce records pertaining to B.H. Defendant attended each proceeding. It is clear from the record that the delay was caused not by the State's inactions, but the aforementioned extensive, and in part successful, motion practice to which the PCR court, who again was the trial judge, was aware. See Long, 119 N.J. at 470 (holding "[a]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation" (quoting State v. Gallegan, 117 N.J. 345, 355 (1989))).

Further, defendant failed to establish he was prejudiced by any delay. He identified no witnesses who were unavailable, or whose testimony or memory faded by the delay between his arrest and trial. Nor did he certify any physical

15

evidence was compromised or that his actual defense was otherwise disadvantaged by the delay. Further, as the PCR court explained, defendant was not detained pretrial and implementation of bail reform prioritized trying cases concerning incarcerated defendants. See, e.g., Doggett v. United States, 505 U.S. 647, 656 (1992) (explaining legitimate delays, "however great," will not violate a defendant's speedy trial right if it does not specifically prejudice defendant's defense).

Because the length of the delay does not alone establish a violation of his speedy trial rights, see Detrick, 192 N.J. Super. at 426; see also State v. Fulford, 349 N.J. Super. 183, 195 (App. Div. 2002) (explaining "[e]xcept in the most egregious cases, the length of the delay and absence of any explanation for the delay cannot alone justify a" dismissal on speedy trial grounds), and because defendant presented insufficient evidence to show a reasonable probability a speedy trial motion would have been meritorious, defendant failed to sustain his burden of demonstrating prejudice under the second prong of the Strickland standard. See 466 U.S. at 687, 694. The PCR court therefore correctly determined defendant failed to present a prima facie claim of ineffective assistance of counsel under the Strickland standard on the claim his counsel was ineffective by failing to assert defendant's right to a speedy trial.

A-3580-22

B.

In defendant's second through fourth points, he contends the PCR court erred in rejecting his claims his counsel failed to conduct an adequate investigation. Specifically, he contends his counsel should have retained a forensic expert or doctor who "specialized in sexual contact with children [which] might have caused the State to make a more favorable plea offer or caused the jury to have a reasonable doubt that the defendant molested B.H." Defendant further maintains his counsel should have retained such an expert "given the State's lack of evidence."

Defendant also argues trial counsel did not vigorously cross-examine B.H. or the other trial witnesses. Specifically, he maintains when B.H. testified "this is the way I remember the incident now," his counsel failed to highlight the inconsistencies between her statement and her trial testimony such as "her varying descriptions of the defendant's role in the church, when she sought medical attention for the rug burns, her relationship with her parents, and what information she relayed to her friends." Defendant contends B.H.'s conflicting statements were crucial to establishing reasonable doubt, especially, in what the defendant argues, is a one-witness case.

Defendant also asserts his counsel ineffectively prepared him for trial, and his contentions were not "bald assertions" as the PCR court held, because he attested his counsel failed to meet with him, discuss his defense, or keep him apprised of developments in the case, which left him feeling "despondent over his prospects of mounting an effective defense at trial." He further argues it was improper to address the veracity of his claims without an evidentiary hearing.

In his fifth and final point, defendant argues his trial counsel failed to advocate more forcefully to pierce the rape shield and obtain DNA sampling of the carpet, which he speculates would have shown B.H. had sexual contact with another man on carpet, undermining the notion defendant caused B.H.'s rug burn. Second, defendant argues trial counsel should have hired an expert to perform an independent analysis of the cell phones to allow the jury to see all texts between defendant and B.H., not just those messages selected by the State. Third, defendant argues his counsel improperly permitted the State to mischaracterize him as a minister, which gave the jury a false impression that he had a supervisory role over B.H.

Defendant also faults his trial counsel for not adequately explaining to the court the need for a mistrial after the State played an unredacted version of the phone call to the jury. Defendant contends the unredacted call contained his

statement that he was "afraid to speak with [B.H.] because the police were listening to his phones due to an investigation involving another victim" which he believes could have turned the jury against him. Finally, defendant claims these above-mentioned errors, viewed together, establish trial counsel's ineffectiveness.

The PCR court correctly found defendant's claim regarding his counsel's failure to retain a forensic expert was a mere bald assertion, see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999), as his proofs on this point are reduced to his own self-serving assertions. His certification fails to identify any expert, the anticipated testimony, or how that unspecified testimony would have changed the trial outcome. Further, as noted, defendant's trial counsel challenged the victim's claim of a rug burn by calling Dr. Wolf who testified the injury depicted in the photographs was not consistent with a rug burn.

Similarly, we find defendant's claim his counsel's trial performance was constitutionality infirm under Strickland because he allegedly ineffectively cross-examined witnesses at trial to be equally without merit. The record clearly reflects defendant's trial counsel conducted an extensive cross-examination of the victim which spanned 185 transcript pages and covered topics such as the

defendant's conduct, the investigation, the rug burn injury, the victim's boyfriend, and the rumor surrounding her virginity. Trial counsel also effectively questioned the State's other witnesses by attempting to point out inconsistencies between investigative reports and testimony and the inadequacy of such reports.

We are satisfied, consistent with the PCR's court's conclusions, and after our review of the trial proceedings, counsel's discretionary decisions in examining the victim in a sexual assault case simply did not fall "below an objective standard of reasonableness" such that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. Based on the trial proofs, there does not exist a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Simply put, defendant's claims his counsel failed to investigate the case, or prepare a proper defense, is unsupported by the record. As noted, and borne out by the trial proceedings, his counsel retained and called a forensic expert to challenge the physical evidence of a rug burn, extensively cross-examined B.H., and identified the deficiencies in the State's case, the police's investigation, and B.H.'s testimony. Defendant's certification provides, as proof of counsel's

ineffective preparation for trial, little more than vague critiques of counsel's actions coupled with unfounded claims about how additional preparation would have affected the trial outcome. Further, to the extent he contends his counsel did not keep him apprised of significant trial events or strategies, those assertions are belied by his appearance in court during the critical motion practice detailed above.

The same holds true for defendant's remaining claims, as they too were conclusory, unsupported, speculative, to warrant relief. And defendant failed to establish before the PCR court or us, that any purported claim had the reasonable probability of altering the trial results. As we discern no individual deficiency in counsel's performance, we similarly reject his cumulative error argument.

We are satisfied the court correctly determined defendant failed to satisfy either prong of the Strickland test and failed to present a prima facie claim of ineffective assistance of counsel. The court did not misapply its discretion by denying defendant's request for an evidentiary hearing.

To the extent we have not addressed any remaining arguments, it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21                                                                    A-3580-22